S11A0314, S11X0315. STATE v. ABERNATHY; and vice versa.
(715 SE2d 48)

HUNSTEIN, Chief Justice.

Samuel Mitchell Abernathy was convicted by a White County jury of the January 2008 murder of Darrin Ramey and sentenced to life imprisonment. On motion for new trial, the trial court, while rejecting most of Abernathy's contentions, granted the motion on the sole ground that Abernathy's public defender had rendered ineffective assistance due to a conflict of interest inhering in his representation of Abernathy. The State obtained a certificate of immediate review and filed an application for interlocutory appeal challenging the award of a new trial, which this Court granted. Abernathy then filed a cross-appeal, contesting the trial court's rejection of his other alleged grounds for reversal. For the reasons set forth below, we find that the trial court erred in granting Abernathy a new trial and therefore reverse and remand for further proceedings in the trial court.[1]

*Case No. S11A0314*

1. The trial court granted Abernathy's motion for new trial based on the finding that Abernathy's public defender, Charles Brown, was employed in the same circuit public defender's office as initial counsel for Abernathy's co-arrestee in the case, John Geren. Geren, Abernathy's then-romantic partner, was a witness to the altercation from which Abernathy's conviction arose and fled the scene with Abernathy in the aftermath thereof; the two men were apprehended while fleeing and placed under arrest later on the day of the crime.

As found by the trial court, the undisputed evidence reflects that within hours of the men's arrest on January 10, 2008, Neil Smith of the Enotah Circuit Public Defender's Office visited Geren at the jailhouse, confirming Geren's desire for legal representation, and Geren told Smith his version of events surrounding the crime. Smith then filed an entry of appearance on Geren's behalf in the case as well as standard preliminary motions. Shortly thereafter, however,

---

[1] Abernathy's motion to dismiss the State's appeal on the ground that its brief was untimely is denied.

Geren retained private counsel, who filed an entry of appearance in the trial court on January 16, 2008, whereupon Smith withdrew from the case and Geren's case file in the public defender's office was closed. In March 2008, Geren was released without charge, and he ultimately testified at trial as a key witness for the State, providing an eyewitness account of the crime and incriminating details regarding Abernathy's conduct beforehand and thereafter.

Abernathy, who had initially indicated he would retain private counsel, ultimately came to be represented by Brown, who entered an appearance on Abernathy's behalf in April 2008. Brown had been sworn in as the Enotah Circuit Public Defender in January 2008, on the very day Smith withdrew his representation of Geren. Smith left the employ of the Enotah public defender's office within weeks of Brown's entry of appearance on Abernathy's behalf. Brown and Smith thus never communicated regarding the case, and it is undisputed that Brown had no knowledge that his office had briefly represented Geren in the case until well after his representation of Abernathy had ended.

Based on these facts, the trial court, analogizing lawyers within a single circuit public defender office to lawyers within a single law firm, found that Brown was laboring under an actual conflict of interest in his representation of Abernathy, that prejudice therefrom must be presumed, and that Abernathy had thus received ineffective assistance of counsel. While we agree with the trial court that Abernathy and Geren's interests in the case were adverse to one another's and would thus — assuming, arguendo, that the rules for imputing conflicts operate within a single circuit public defender office in the same manner as those within a law firm[2] — give rise to a conflict, we disagree with the conclusion that Abernathy need not show any actual harm to prove a Sixth Amendment violation in these circumstances. See generally *Dockery v. State*, 287 Ga. 275 (5) (695 SE2d 599) (2010) (appellate court accepts trial court's fact findings regarding ineffective assistance unless clearly erroneous but reviews legal conclusions de novo).

Rather, as we have previously held, "a defendant . . . asserting ineffective assistance of counsel based on an actual conflict of interest [must] demonstrate that the conflict of interest existed and that it 'significantly affected counsel's performance.'" (Footnote omitted.) *Edwards v. Lewis*, 283 Ga. 345, 349 (2) (658 SE2d 116) (2008). Thus,

the critical question is whether the conflict significantly

---

[2] We note that the propriety of this assumption is currently before us squarely in *In re Formal Advisory Opinion No. 10-1*, No. S10U1679 (docketed July 1, 2010).

affected the *representation*, not whether it affected the outcome of the underlying *proceedings*. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown, and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation.

(Emphasis in original.) Id. at 351 (2). A significant effect on the representation may be found, for example, where counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict, see id. at 350 (2); where counsel negotiates a plea bargain for more than one defendant in a case conditioned on acceptance of the plea by all such defendants, see *Tarwater v. State*, 259 Ga. 516 (383 SE2d 883) (1989); or where one of the State's witnesses was a current client of defense counsel in an unrelated criminal matter, thereby constraining counsel's ability to cross-examine the witness. See *Mitchell v. State*, 261 Ga. 347 (2) (405 SE2d 38) (1991).

In this case, the trial court expressly noted the absence of any evidence that the conflict "colored counsel's actions during the trial." Indeed, given that Brown was completely unaware of Smith's brief past representation of Geren, he neither was privy to any confidential communications between Smith and Geren nor had any reason to temper any aspect of his trial strategy out of concern for Geren. Simply put, "[Abernathy] has not shown in this case how his attorney's conflict caused divided loyalties [or] compromised his attorney's representation of him." *Jackson v. State*, 271 Ga. 705, 706 (1) (523 SE2d 871) (1999). Therefore, the trial court erred in granting a new trial on these grounds.

## Case No. S11X0315

2. In his cross-appeal, Abernathy claims error in the trial court's rejection of several other grounds on which he seeks a new trial. Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows.[3] Shortly before midnight on

---

[3] The crime occurred on January 10, 2008. On April 7, 2008, Abernathy was indicted by a White County grand jury on one count of malice murder and one count of aggravated assault. At the conclusion of a jury trial held November 17-21, 2008, Abernathy was found guilty on both counts. The trial court sentenced Abernathy to life imprisonment for murder and merged the aggravated assault count therein for sentencing purposes. Abernathy's timely motion for new trial was filed on December 19, 2008 and amended a total of six times both before and after the hearing thereon, which was held March 31 and April 1, 2010. In addition, on April 1, 2010, Abernathy filed an extraordinary motion for new trial based on newly discovered evidence, which the court ultimately declined to rule on after granting the amended motion for new trial.

the evening of January 9, 2008, Abernathy, who had been drinking for several hours, and Geren went to the Southside Bar to play pool. Abernathy had previously been banned from the premises of the bar, and thus shortly after the men's arrival the bartender asked them to leave. During the exchange with the bartender, in which Abernathy implored her to allow them to stay, Ramey and his friend Luther Mize approached and reiterated the bartender's request that they leave. Abernathy responded by suggesting they "take this out in the parking lot"; Geren then urged Abernathy to leave with him and turned to go. Ramey followed the two men to the door; Mize, who had become agitated, was being restrained by friends but called out to Ramey not to go outside. As Ramey followed Abernathy into the parking lot, Abernathy turned around, withdrew a knife from his pocket, and stabbed Ramey in the chest. Abernathy and Geren ran to their truck and sped off but were apprehended a short time later. Ramey later died from his wound, which was inflicted with such force that, according to the medical examiner, the victim's sternum was bisected.

Both Geren and one other eyewitness, Edsel Thomas, testified to seeing Abernathy lunge at Ramey. Thomas further testified that he did not see Ramey make any aggressive moves toward Abernathy. Geren also testified that, earlier on the evening of the crime, Abernathy had claimed to have his "Smith & Wesson" in his pocket. In addition, Geren testified that, while in the truck fleeing the bar, Abernathy instructed Geren to hit him in the face, which Geren did, in an effort to make it appear that Ramey had been the aggressor. When they realized police were following them, Abernathy threw the knife out the window of the truck.

After being apprehended, Abernathy made unsolicited remarks about the crime in the police patrol car, admitting that he had stabbed the victim but claiming he had done so only in response to the victim's aggression. While in a jail holding cell prior to his arrest, Abernathy made additional spontaneous statements, which were recorded and played for the jury, also to the effect that he had stabbed Ramey in self-defense.

The evidence was sufficient for a rational trier of fact to find Abernathy guilty beyond a reasonable doubt of the malice murder and aggravated assault of the victim. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Abernathy contends that the trial court erred in its disposition as to a second alleged conflict of interest issue on the part of Brown. The record reflects that, immediately prior to his appointment as Enotah Circuit Public Defender, Brown served as Helen's city

attorney[4] and simultaneously as its municipal court solicitor. The record further reflects that, during Brown's tenure as solicitor, Abernathy was issued numerous citations for traffic and other misdemeanor offenses; in one such case in 2006, Abernathy agreed to twelve months' banishment from the City of Helen in exchange for dead-docketing the charge. However, Brown had no involvement on the City's behalf in any matters related to the Ramey homicide.

As discussed in Division 1, in order to establish ineffective assistance arising from a conflict of interest, a defendant must show the existence of an actual conflict that adversely affected counsel's performance. We have previously held that the bare fact that defense counsel was employed as a solicitor and/or city attorney simultaneous with his representation of the defendant within the jurisdiction he served is insufficient by itself to satisfy this burden of proof. See *Wharton v. Thomas*, 256 Ga. 76 (343 SE2d 694) (1986) (no per se conflict where defense counsel concurrently employed as city attorney); *O'Melia v. State*, 255 Ga. 476 (339 SE2d 586) (1986) (even where defense counsel's simultaneous employment as solicitor did create actual conflict, no relief where no proof of adverse effect on representation); *Hudson v. State*, 250 Ga. 479 (1) (299 SE2d 531) (1983) (no per se conflict when defense counsel concurrently employed as state court solicitor). Here, as the trial court found, Abernathy has failed to establish how Brown's past employment as city attorney and solicitor actually affected his representation in any way. Accordingly, this enumeration is without merit.

4. Abernathy also contends that, even apart from the alleged conflicts of interest, counsel's performance at trial fell below that of a reasonably competent attorney in several respects. To prove such ineffective assistance of counsel, a defendant "must show that his attorney's performance was deficient and that the deficiency so prejudiced him that a reasonable probability exists that, but for counsel's errors, the outcome of his trial would have been different. [Cit.]" *Gadson v. State*, 289 Ga. 117, 119 (3) (707 SE2d 868) (2011).

(a) Abernathy claims trial counsel performed deficiently by failing to investigate and present evidence in support of a mental health defense. Specifically, Abernathy points to evidence regarding traumatic head injuries he had previously sustained; his addiction to prescription medications; his multiple psychiatric hospitalizations; and his diagnoses with major depression, anxiety disorder, generalized panic disorder, bipolar disorder, schizophrenia, and other conditions. However, "[m]ental abnormality, unless it amounts to insan-

---

[4] Brown's service as city attorney apparently continued, uncompensated, for two months after he became Circuit Public Defender.

ity, is not a defense to a crime." *Wallace v. State*, 248 Ga. 255, 262 (8) (282 SE2d 325) (1981). Compare *Hall v. McPherson*, 284 Ga. 219 (663 SE2d 659) (2008) (failure to present mental health evidence as mitigation in penalty phase of death penalty trial constituted ineffective assistance). To the extent that Abernathy contends trial counsel should have pursued a special plea of incompetency or an insanity defense, the record reflects that trial counsel, recognizing Abernathy's mental health problems from the beginning, sought an expert mental health evaluation within days of first appearing in the case. The court-appointed mental health expert concluded that Abernathy, though having significant mental health problems, was competent to stand trial, and Abernathy presented no expert testimony to the contrary. With regard to an insanity plea, the record reflects that trial counsel considered this possibility, having discussed it with Abernathy's mother, and rejected it. Given that such a defense would have significantly undercut Abernathy's assertion that he acted in self-defense, this decision constituted reasonable trial strategy. See *Whitus v. State*, 287 Ga. 801 (2) (700 SE2d 377) (2010) (no deficient performance where counsel made reasonable strategic decision, after seeking psychiatric evaluation of defendant, not to pursue insanity defense which would have run counter to other defenses). Compare *Martin v. Barrett*, 279 Ga. 593 (619 SE2d 656) (2005) (conviction properly vacated where, despite knowledge of defendant's history of mental illness, counsel failed altogether to seek expert mental health evaluation or otherwise investigate the issue).

(b) Abernathy next asserts that trial counsel failed to develop a cohesive defense strategy and otherwise to pursue a vigorous defense, a claim which is belied by the record. As outlined in his opening statement, counsel consistently sought to present Abernathy's actions as having been taken in self-defense. Counsel vigorously cross-examined the State's witnesses with this theme in mind and, in light of the overwhelming evidence that Abernathy was the perpetrator, made the reasonable strategic decision to concede this point while seeking to adduce evidence that Abernathy reasonably feared for his life or bodily integrity when the victim followed him outside the bar. See generally *Upton v. Parks*, 284 Ga. 254 (2) (664 SE2d 196) (2008) (decisions based on reasonable trial strategy do not constitute deficient performance). Abernathy can pinpoint no specific strategic decision by trial counsel that was both professionally incompetent and prejudicial to Abernathy's defense. For example, though Abernathy assails the decision not to have Abernathy testify — a decision that, we note, was ultimately Abernathy's to make after receiving counsel's advice on this issue, see, e.g., *State v. Nejad*, 286 Ga. 695 (1) (690 SE2d 846) (2010) — the defense made a reasonable

strategic decision to rely on Abernathy's self-serving assertions of self-defense in the spontaneous custodial statements introduced by the State, thereby avoiding exposing Abernathy to a potentially bruising cross-examination.

(c) Abernathy next contends that trial counsel rendered ineffective assistance by failing to particularize Abernathy's motion to suppress physical evidence and custodial statements. With respect to the physical evidence, the knife used to stab the victim was found by police on a public right of way during a search of the route from which Abernathy and Geren fled the scene, and Abernathy's clothes, which were stained with blood later determined to be the victim's, were seized from his person upon his detention. See *Smith v. State*, 284 Ga. 304, 307 (3) (a) (667 SE2d 65) (2008) (it is "well established" that search and seizure incident to lawful arrest "requires no additional justification"). Thus, there was simply no basis to seek suppression of these items. As to Abernathy's statements made in the jail holding cell and those made later during formal police questioning, trial counsel successfully sought suppression of those portions of these statements made after Abernathy had invoked his right to counsel. In addition, as counsel testified at the motion for new trial hearing, the portions of the statements that were admitted were largely self-serving in that they reinforced Abernathy's justification defense.

(d) Abernathy complains that trial counsel failed to object when the State elicited evidence regarding Abernathy's homosexual relationship with Geren. Such an objection would have been meritless, given that the State was entitled to establish the relationship between Abernathy and Geren, a key witness, see OCGA § 24-9-68, and that the State did not attempt to belabor the issue beyond this limited purpose. Moreover, trial counsel had sought through voir dire to eliminate jurors who may have held biases against those practicing homosexuality.

(e) Abernathy also alleges that counsel failed to inform him that he faced a maximum sentence of life without eligibility for parole for 30 years. However, even assuming that trial counsel performed deficiently in this regard, Abernathy cannot establish prejudice from his alleged misapprehension about parole eligibility insofar as there was no evidence the State would have considered a plea deal even if Abernathy had offered to plead guilty.

5. Abernathy also asserts error with respect to the conduct of certain portions of voir dire in a private jury room rather than in open court. Both the Sixth Amendment and the Georgia Constitution, Art. I, Sec. I, Par. XI (a), provide for the right of a public trial to criminal defendants. *Purvis v. State*, 288 Ga. 865 (1) (708 SE2d 283) (2011). This right to a public trial extends to voir dire. *Presley v.*

*Georgia*, ___ U. S. ___ (130 SC 721, 175 LE2d 675) (2010).

The record reflects that the trial court and both the State and the defense agreed at the outset of voir dire that prospective jurors would be permitted, if they were reluctant to answer questions of a sensitive nature in open court, to so indicate and be afforded the opportunity to answer such questions privately. As defense counsel explained to prospective jurors:

> [T]his is a very serious case and it's very important that we get your answers to these questions, that we get full answers from you and we get accurate and truthful answers from you.
>
> And we don't mean to embarrass anybody in this procedure, so if there is any question that I ask you, rather than not responding to it because it may be embarrassing, I'm going to try to ask the question in a way that won't narrow it down too much to anybody.
>
> But rather than answering, if you'll just raise your hand, and when I ask you, tell me you'd rather take it up in private, and we can do that. But I don't want you to fail to answer a question or fail to answer a question fully because you think it might be embarrassing to you or you're uncomfortable answering the question. This is a very important case. It's very important that we know what your answers are to the questions that we ask you.

Various jurors did indicate discomfort with answering certain questions regarding their views on homosexuality and prior arrests, for example, and were questioned individually on these issues in a separate conference room in the presence of the trial judge, the prosecution, and the defense, including Abernathy himself. In these sequestered sessions, counsel for both parties also questioned some jurors regarding the content of pretrial publicity to which they had been exposed. Thus, this sequestered voir dire was intended to promote candor on the part of prospective jurors — many of whom, as members of a small community, were acquainted with each other and/or one or more of the parties in the case — by minimizing the potential for embarrassment in being subjected to fully public questioning on sensitive issues, as well as to avoid tainting the entire jury panel with discussion of pretrial publicity to which only some had been personally exposed, both interests serving the broader purpose of protecting Abernathy's right to a fair trial.

Though Abernathy's trial counsel not only acquiesced in but fully endorsed this procedure in furtherance of Abernathy's right to a *fair* trial, Abernathy's appellate counsel now attacks the same

procedure as violating Abernathy's right to a *public* trial. However, as we have recently noted, the right to public trial " 'may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial. (Cit.)' . . . [Cit.]" *Purvis*, supra, 288 Ga. at 869 (1). Moreover, because Abernathy did not raise an objection to this procedure at trial, "the issue of closure [may only be] raised in the context of an ineffective assistance of counsel claim." *Reid v. State*, 286 Ga. 484, 487 (3) (c) (690 SE2d 177) (2010). As with other ineffectiveness claims, Abernathy may prevail only if he can demonstrate prejudice. Id. at 488 (3) (c) ("where, as here, the issue of a courtroom closure is raised in the context of an ineffective assistance of counsel claim, prejudice will not be presumed").[5] Given that the procedure was designed with the express purpose of maximizing the odds of an impartial jury and thus a fair trial, Abernathy cannot make this showing.

6. In his final enumeration, Abernathy contends that the trial court erred in deferring decision on his extraordinary motion for new trial. The trial court correctly found it unnecessary to resolve this motion in light of its decision to grant a new trial on other grounds. Accordingly, there was no error in this regard. However, given this Court's foregoing determination that Abernathy's motion for new trial should have been denied in its entirety, the extraordinary motion for new trial will be ripe for disposition on remand.

*Judgment affirmed in part and reversed in part, and case remanded. All the Justices concur.*

DECIDED JULY 5, 2011 —
RECONSIDERATION DENIED JULY 21, 2011.

*N. Stanley Gunter, District Attorney, Cathy Cox-Brakefield, William J. Langley, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellant.

*McDonald & Cody, Douglas W. McDonald, Sr.*, for appellee.

---

[5] Though the author of this opinion vigorously dissented to this holding in *Reid*, see id. at 489 (Hunstein, C. J., dissenting), this principle is the current law of the State on this issue.