**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 19, 2015**

# In the Court of Appeals of Georgia

A15A0764. PRYOR v. THE STATE.

BARNES, Presiding Judge.

A jury convicted James Pryor of attempted armed robbery and possession of a firearm during the commission of a crime, and the trial court denied his motion for new trial. On appeal, he argues that he was denied his constitutional right to counsel because his trial counsel had an actual conflict of interest and that his counsel was ineffective for failing to object to certain testimony and evidence. For the reasons that follow, we affirm.

1. "On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that as three men were preparing to leave the parking lot of a club that had just closed at 4:00 am, Pryor, Derrick Brown, and Reginald Frails approached their car, with Pryor "leading the pack." The first victim was already in the back seat and the other two victims were standing on the driver's side of the car. Pryor pulled out a handgun and asked the second victim to empty his pockets, and after the second victim protested that he had nothing, Pryor stuck his head into the car through the open driver's door and told the first victim inside to empty his pockets. Pryor pointed his gun at the first victim inside the car, but when Pryor turned to look at Brown and Frails pushing up against the third victim outside the car, the first victim picked up his .48 caliber semi-automatic handgun from the floorboard and began firing at Pryor. Pryor dropped his weapon, a .38 caliber revolver, at the feet of the second victim, who picked it up and began firing at all three robbers, all of whom were running away when they were hit by either the .38 or the .48 caliber gun. An off-duty deputy sheriff working security at the club arrived on the scene almost immediately, cuffed the victims, and placed them in separate patrol cars.

Emergency medical technicians were called to the scene and Pryor, Frails, and Brown were taken to the hospital and the three victims were taken to the station. The lead investigator went to the hospital and talked to Brown, who had been shot in the knee and whose responses to questions were "elusive" and unclear. Frails, who had been shot in the buttocks, refused to talk to the investigator and left the hospital against medical advice while the investigator went to see if he could talk to Pryor. Pryor had been sedated, was unable to respond to the investigator, and appeared to have been shot in his neck or the top of his chest.

The investigator then interviewed the three victims at the station. He described them as "calm and collected" and "very precise." The first victim, who had been seated in the car, had a valid carry permit for the semi-automatic .48 caliber handgun he shot at Pryor. The victims' virtually identical statements coupled with evidence from the scene led the police to re-categorize the three men at the station from suspects to victims. Frails, who had been clutching two plastic bags containing 22 grams of cocaine when he arrived at the emergency room, was subsequently arrested at his last known address for possession with intent to distribute. Frails subsequently pled guilty to criminal attempt to commit armed robbery and possession of cocaine with intent to distribute.

None of the victims could identify Frails or Brown from a photographic line-up. The victims were not presented with a line-up containing Pryor's photograph because the investigator did not have one available, but two of them identified Pryor at trial as the man with the handgun who attempted to rob them. Frails testified at trial that he did not remember much from that night because he was very drunk but did remember that Pryor had a .38 revolver. Frails also admitted having said at his plea hearing and sentencing that he had walked to the victims' car with Pryor, that Pryor pulled his gun, that Frails and Pryor both told the victims to empty their pockets, that Pryor had leaned into the car, that shots were fired and that the three defendants ran away.

Although Pryor does not challenge the sufficiency of the evidence, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. *Jackson*, 443 U. S. at 319 (III) (B).

2. Pryor argues that his trial attorney had an actual conflict of interest that denied him his constitutional right to counsel because his attorney worked in the same circuit public defender's office as the attorney who represented Frails. Pryor further asserts that "[p]rejudice is presumed from ... [this] conflict" and that he is therefore

entitled to a new trial. We disagree that prejudice is presumed from this situation, and find no error in the trial court's conclusion that Pryor "sweeps too broadly in his statement that there is a per se or automatic rule of disqualification by a public defender's office representing multiple defendants."

In July 2013, the Georgia Supreme Court held that the standard for the imputation of conflicts of interest under Georgia Rule of Professional Conduct 1.10 (a) applies to the office of a circuit public defender the same way it does to a private law firm. *In re Formal Advisory Opinion 10-1*, 293 Ga. 397 (744 SE2d 798) (2013). Specifically, the court held that if "a single public defender in the circuit public defender's office of a particular judicial circuit has an impermissible conflict of interest concerning the representation of co-defendants, then that conflict of interest is imputed to all of the public defenders working in the circuit public defender office of that particular judicial circuit." Id. at 399 (1). The Supreme Court also expressly did not determine whether the representation of co-defendants by different lawyers employed by the same circuit public defender office was absolutely prohibited, but limited its approval of the Bar's Proposed Rule only as to the question of conflict imputation. Id. at 398, n. 1. The court further observed that, while it had cited precedent addressing the constitutional guarantee of the assistance of counsel, it did

not hold that the imputation of conflicts was compelled by the Constitution, only that Rule 1.10 was "a useful aid in the fulfillment of the constitutional guarantee of the right to effective assistance of counsel." Id. at 401 (2), n. 4.

Generally, to prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel rendered deficient performance and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). But a defendant need not show that his counsel's deficient performance probably affected the outcome of his case under circumstances in which the likelihood is high that counsel's inadequate performance undermined the reliability of the verdict. *Mickens v. Taylor, ,* 535 U.S. 162, 166-167 (II) (122 SCt 1237, 152 LE2d 291) (2002). Those circumstances include situations where the assistance of counsel was denied entirely or during a critical stage of the proceeding and when counsel had an "actual conflict." Id. For Sixth Amendment purposes, an actual conflict of interest is one that adversely affects counsel's performance. Id. at 172, n. 5. For example, automatic reversal results when, despite a timely objection, a trial court improperly requires defense counsel to continue representing multiple defendants in a single trial without determining that no conflict

6

exists. *Holloway v. Arkansas*, 435 U.S. 475, 488-489 (III) (98 SCt 1173, 55 LE2d 426) (1978).

Pryor's trial counsel was not representing multiple defendants with conflicting interests, however. Regardless of the ethical considerations of having lawyers in the same office work for clients with competing interests, "[b]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." (Citation and punctuation omitted.) *Mickens v. Taylor*, 535 U.S. 162, 176 (122 SCt 1237; 152 LE2d 291) (2002).

> The purpose of [the United States Supreme Court's] *Holloway*[, 435 U.S. at 488-489] and *[Cuyler v.] Sullivan*[, 446 U.S. 335, 348-349 (IV) (C) (100 SCt 1708, 64 LE2d 333) (1980)] exceptions from the ordinary requirements of *Strickland*, however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel.

*Mickens*, 535 U.S. at 176 (III). And the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350 (IV) (C).

Instead, "[t]he defendant must show that an actual conflict exists, meaning that there is a substantial risk that the lawyer's representation of him would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to

7

another current client, a former client, or a third person." (Citation and punctuation omitted.) *Lytle v. State*, 290 Ga. 177, 178 (2) (718 SE2d 296) (2011). "Whether a conflict of interest denied a defendant his right to effective counsel is a mixed question of law and fact, and we review the questions of law involved de novo." (Citation and punctuation omitted.) *Barrett v. State*, 292 Ga. 160, 174 (3) (c) (2) (733 SE2d 304) (2012).

In *State v. Abernathy*, 289 Ga. 603, 604 (1) (715 SE2d 48) (2011), our Supreme Court reversed a trial court's grant of a new trial when a defendant failed to show "actual harm" arising from the simultaneous representation of two co-defendants by two lawyers working in the same public defender's office.[1]

> [T]he critical question is whether the conflict significantly affected the representation, not whether it affected the outcome of the underlying proceedings. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown, and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation. A significant effect on the representation may be found,

---

[1]While the opinions in *Lytle* and *Abernathy* were issued after the Georgia Supreme Court granted the petition for discretionary review of the Bar's advisory opinion but before its final ruling in July 2013, nothing in the final ruling requires a different analysis.

for example, where counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict; where counsel negotiates a plea bargain for more than one defendant in a case conditioned on acceptance of the plea by all such defendants; or where one of the State's witnesses was a current client of defense counsel in an unrelated criminal matter, thereby constraining counsel's ability to cross-examine the witness.

(Citations and emphasis omitted.) Id. at 604-605 (1).

In *Abernathy*, 289 Ga. 603-604 (1), a public defender from the same office as Abernathy's counsel briefly represented a man who was arrested with Abernathy, but withdrew after the man hired another lawyer. Charges against the man were subsequently dismissed, he ended up testifying for the State, and the trial court subsequently granted Abernathy's motion for new trial on the ground of ineffective assistance due to a conflict of interest. Id. at 603 (1). The Supreme Court reversed. Assuming then that the rules for imputing conflicts within a single circuit public defender office operate the same way as the rules within a law firm (as we now know they do), the court held that the defendant must prove that an actual conflict existed and that it affected trial counsel's performance. Id. at 604 (1). In that case, no evidence indicated that the conflict "colored counsel's actions during the trial," id.

9

at 605 (1), especially considering that Abernathy's lawyer did not even know about the other public defender's brief past representation of the State's witness.

Similarly, in *Lytle*, 290 Ga. at 178-179 (2), although public defenders from the same office represented two co-indictees and the same investigator worked on all three cases, no actual conflict arose because the attorneys did not share information with each other and the investigator only interviewed State's witnesses to see what they knew.

Here, Pryor has not even argued that any conflict significantly affected his trial counsel's representation of him. His trial counsel testified at the motion for new trial hearing that when he was representing Pryor, the circuit public defender's office was very aware of the problems that could arise from having attorneys from the office represent co-defendants and was seeking direct guidance on the issue. It was "a big issue," with lawsuits being filed and constant discussion and review on how to handle the issue. Although they were all under the same roof, pursuant to office policy the attorneys made "every effort to separate representation" by maintaining individual offices, locking their doors to bar access to their files, and being "very, very careful." As the State notes in its appellant brief, trial counsel "did not pull any punches" in his cross-examination of Frails, addressing his drug dealing, his relationship as cousin

to defendant Brown, who Frails testified did *not* have a gun, his maximum possible sentence of more than 65 years versus his actual sentence of 6 years to serve followed by 6 on probation, and his belief that his testimony would buy him leniency. In fact, the trial court admonished counsel not to point at Frails during the cross-examination. "Simply put, [Pryor] has not shown in this case how his attorney's conflict caused divided loyalties or compromised his attorney's representation of him." (Citation and punctuation omitted.) *Abernathy*, 289 Ga. at 605 (1).

Accordingly, we find no merit in this enumeration of error.

2. Pryor contends that the trial court erred in failing to find his counsel ineffective for failing to object to the investigator's testimony that the victims were acting in self-defense when they shot Pryor and his co-defendants or for failing to object to the admission of pants gathered at the scene that had bullet holes in the buttocks. "To prevail on his claim of ineffective assistance of counsel, [Pryor] must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Patterson v. State*, 327 Ga. App. 695, 697 (3) (761 SE2d 101) (2014).

11

a. "It is well established that credibility of a witness is a matter for the jury, and a witness's credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." (Punctuation and footnote omitted.) *Strickland v. State*, 311 Ga. App. 400, 403 (a) (715 SE2d 798) (2011). But "the testimony at issue must be reviewed in the context in which it was given." *Branesky v. State*, 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003). And while an officer rarely needs to explain his conduct during the course of an investigation, an explanation may be admissible if a defendant "at trial raises questions and concerns about police conduct in the case." (Citation omitted.) *Reeves v. State*, 288 Ga. 545, 547 (3) (705 SE2d 159) (2011).

Considered in context, the investigator's testimony that after completing the interviews and reviewing the evidence from the scene, the three men initially taken into custody were no longer suspects because "the events they described were self-defense defending their selves in a forceable felony" explained the investigator's conduct in pursuing charges against the three men who were shot rather than the shooters. As the State observes, the facts of this case raise questions about the motivations and conduct of the police, who initially arrested the three men who were

12

subsequently cast as victims after the officers arrived on the scene to find three men lying on the ground with bullet wounds.

Pryor's trial counsel intimated throughout the trial that the men who did the shooting should have been charged with crimes, rather than the men who had been shot. For example, he thoroughly cross-examined the second victim, who picked up Pryor's gun and fired at the three robbers, asking whether he had argued with anyone that night, why he had gotten his companion's firearm out when they arrived at the car after they left the club, whether he just kept firing the gun until it was empty, and whether he had been arrested initially "after shooting at people and being arrested and you said they tried to rob you." Pryor's counsel asked the officer who secured the scene to identify the victim whom the officer had seen firing a weapon, and asked whether that man had been "firing at an individual who was actually running away from him."

Trial counsel's questions about why the victims who were initially arrested were not ultimately charged placed the investigator's conduct in issue and the investigator's testimony tended to explain his conduct. See *Griffin v. State*, 292 Ga. 321, 323 (5) (737 SE2d 682) (2013). Because the testimony was admissible, Pryor's trial counsel was not ineffective for failing to object to it.

B. Pryor also claims that his trial counsel was ineffective for failing to object to the admission of pants gathered from the scene that had bullet holes in the buttocks and .38 bullets in the pocket. The evidence showed that Pryor was shot in the chest or neck, and Pryor argues that the bullet-ridden pants were not his and should have been excluded from evidence.

Whether the pants belonged to Pryor or not goes to the weight of the evidence, not its admissibility, and an objection would have been futile. *Davis v. State*, 272 Ga. 327, 330 (4) (528 SE2d 800) (2000). As the failure to pursue a futile objection does not amount to ineffective assistance, *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008), the trial court did not err in denying Pryor's motion for new trial on this ground.

*Judgment affirmed. Ray and McMillian, JJ., concur*.