**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 3, 2016**

# In the Court of Appeals of Georgia

A16A1016. MCNORRILL v. THE STATE.

BARNES, Presiding Judge.

A Richmond County jury found Todderius McNorrill guilty of hijacking a motor vehicle, possession of marijuana with intent to distribute, and possession of a firearm during the commission of a crime. On appeal from the denial of his motion for new trial, McNorrill challenges the sufficiency of the evidence supporting his convictions. McNorrill further contends that he was deprived of his constitutional right to effective counsel because his trial counsel had an actual conflict of interest and failed to object to certain jury instructions. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). The evidence in the present case, viewed in favor of the verdict, was recently summarized by this Court

in *Whaley v. State*, __ Ga. App. __ (785 SE2d 685) (2016), the appeal of McNorrill's co-defendant, Meguel Whaley:

> [A]round 10:30 p.m. on July 5, 2010, the victim received a call from his friend Chris asking if the victim wanted to hang out. The victim did not know Chris very well,[1] but agreed to pick him up at a gas station. After meeting up with Chris, the victim drove them around until Chris asked to stop at someone's house for a few minutes. The victim drove Chris to the house, and Chris went inside while the victim remained in his car. After Chris returned to the car, they continued to ride around until Chris received a call on his cell phone. The victim pulled his car into another gas station and let Chris out of the car so that he could talk on the phone privately. After talking on his phone, Chris got back into the car and asked the victim to drive to a nearby elementary school so that they could meet up with two men whom Chris identified as his cousin and his friend.
>
> After Chris directed the victim to the elementary school, the victim drove into a lot on the side of the school to wait for Chris' cousin and friend to approach the car. Once the victim had driven into the lot, however, Chris asked the victim to turn off his car and walk with him behind the school to meet up with his cousin and friend there. Although he "felt kind of suspicious" at that point, the victim agreed to walk with Chris behind the school. Upon walking behind the school, the victim saw two men, later identified as . . . [co-defendant] Whaley and . . .

---

[1] The victim did not know Chris' last name or where he lived.

2

McNorrill, sitting on some steps. Chris approached Whaley and McNorrill, gave them a high-five, and spoke with them privately for a few minutes while the victim stood nearby.

The victim thought they were going to walk back to his car, but Whaley suddenly approached the victim and pointed a handgun at him. Whaley said, "You know what time it is," which the victim understood to mean that he was being robbed. Whaley held the gun to the victim's head as he went through the victim's pockets with his other hand. Chris began protesting, but Whaley told McNorrill to "shut him up," and McNorrill pulled out a handgun and pointed it at Chris. The victim later told the police that one of the guns was a .22 caliber weapon and the other was a .380 caliber black and silver weapon.

Whaley told the victim to lie down on the ground and asked McNorrill for a roll of duct tape. After the victim lay on the ground, Whaley got the duct tape from McNorrill and wrapped it around the victim's eyes, mouth, and hands. Whaley placed his gun against the victim's head and again went through the victim's pockets, taking $125 in cash, a cell phone, the victim's keys, and his driver's license. Whaley warned the victim that he and McNorrill had the victim's identification and would kill the victim if he called the police. Before running from the scene, Whaley and McNorrill kicked the victim in the legs, ribs, and head.

The victim was able to free himself from the duct tape in time to see Whaley and McNorrill get inside his car and drive away from the

school.[2] The victim then walked to a gas station a few minutes away and used the phone to call the police. A sheriff's deputy arrived at the gas station shortly thereafter, and the victim told the deputy about what had happened, described the two suspects, and provided a description of his stolen car. The deputy radioed the information to his dispatcher, and other deputies in the area were told to be on the lookout for the victim's car.

A few minutes later, another deputy saw the victim's car stopped at a red light at an intersection, confirmed that it matched the description of the stolen vehicle, and attempted to initiate a traffic stop. When the deputy activated the emergency lights on his marked patrol car, the driver of the victim's car ignored the lights and drove away, resulting in a police chase.

A deputy in a second marked patrol car activated his emergency lights and took over the chase. As the chase continued, Whaley jumped out of the driver's side door while the victim's car was still moving and ran towards the woods. McNorrill remained in the front passenger seat after Whaley jumped out, and the victim's car crashed through a fence and came to a stop against a tree. Deputies pursued Whaley on foot and gave several verbal commands for him to stop, but he continued running from them. One of the deputies caught up with Whaley and was able to apprehend him. . . .

---

[2] Chris apparently ran off separately, but the record is unclear on this point.

4

Another deputy approached the crashed car and arrested McNorrill, who was still in the passenger seat. The deputy searched McNorrill and discovered twelve .22 caliber bullets in his pocket. The victim subsequently was driven to the scene where the car chase had concluded, and he confirmed that Whaley and McNorrill were the perpetrators in a show-up identification.

Deputies searched the victim's car that had been taken by Whaley and McNorrill. Marijuana weighing a total of 4.5 grams was in plain view on the passenger seat and on the driver's side floorboard. From the way the marijuana was packaged, it appeared to be for distribution. The victim later testified at trial that the marijuana did not belong to him. Additionally, deputies found a loaded Hi-Point .380 caliber handgun on the driver's seat, and the victim testified that it was the gun that Whaley had pointed at him.

Deputies also searched behind the elementary school, where they found an empty roll of duct tape and a baseball cap that belonged to the victim. However, the victim's cell phone, cash, and other personal items were never found.

Whaley and McNorrill were jointly charged with hijacking a motor vehicle, armed robbery, false imprisonment, possession of marijuana with intent to distribute, and two counts of possession of a firearm during the commission of a crime. . . . Whaley and McNorrill subsequently were tried together. The victim and responding deputies testified to the events as summarized above, and the State introduced

and showed to the jury a video recording of the police car chase and photographs of the items seized at the elementary school and from the victim's car. Whaley and McNorrill elected not to testify and did not present any defense witnesses.

After reviewing all the evidence, the jury found both Whaley and McNorrill guilty of hijacking a motor vehicle, possession of marijuana with intent to distribute, and one count of possession of a firearm during the commission of a crime. . . . The jury acquitted Whaley and McNorrill of armed robbery, false imprisonment, and one count of possession of a firearm during the commission of a crime. . . .

McNorrill filed a motion for new trial, as amended, in which he challenged the sufficiency of the evidence and contended that his trial counsel rendered ineffective assistance. After conducting an evidentiary hearing, the trial court denied the motion. This appeal followed.

1. McNorrill contends that there was insufficient evidence to support his conviction of possession of marijuana with intent to distribute.[3] While he concedes

---

[3] In his enumerations of error, McNorrill also contends that the evidence was insufficient to convict him of hijacking a motor vehicle. However, in the argument section of his brief, McNorrill provides no argument or citations of authority addressing the sufficiency of the evidence as to the motor vehicle hijacking offense. McNorrill thus has abandoned any challenge he may have had to his motor vehicle hijacking conviction on the asserted ground. See Court of Appeals Rule 25 (a) (3), (c) (2); *Jones v. State*, 289 Ga. App. 219, 221 (1), n.1 (656 SE2d 556) (2008).

that there was evidence that he possessed the marijuana found in the victim's stolen

car, McNorrill maintains that there was insufficient evidence showing that he acted

with the intent to distribute the marijuana. We disagree.

> To prove possession with intent to distribute, the State must show
> more than mere possession of a controlled substance. No bright line rule
> exists regarding the amount or type of evidence sufficient to support a
> conviction for possession with intent to distribute, and whether the State
> has proven an intent to distribute is peculiarly a question of fact for
> determination by the jury. Furthermore, in addressing the sufficiency of
> the evidence, we are always mindful that it is not our role to weigh the
> evidence or determine the credibility of witnesses; instead, under the
> standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B)
> (99 SCt 2781, 61 LEd2d 560 (1979), we only determine whether a
> rational trier of fact could have found the defendant guilty of the
> charged offense beyond a reasonable doubt.

(Citations and punctuation omitted.) *Flemister v. State*, 317 Ga. App. 749, 752 (1),

(732 SE2d 810) (2012). Additionally, where, as in the present case, the conviction at

issue is based solely on circumstantial evidence, "the proved facts shall not only be

consistent with the hypothesis of guilt, but shall exclude every other reasonable

Nevertheless, we have reviewed the trial record and conclude that there was sufficient evidence for a rational trier of fact to find McNorrill guilty beyond a reasonable doubt of hijacking a motor vehicle.

7

hypothesis save that of the guilt of the accused," and whether that State has met this burden is normally a question for the jury. (Citation and punctuation omitted.) *Noble v. State*, 225 Ga. App. 470, 471 (484 SE2d 78) (1997).

Here, the marijuana found in the car was packaged in nine individual baggies, with eight of the baggies contained in a larger plastic bag on the driver's side floorboard and the ninth baggie on the passenger seat. The sheriff's investigator testified that, based on his training and experience, the marijuana was packaged in a manner commonly used for distribution.[4] The evidence that the marijuana was "packaged in a manner commonly associated with the sale or distribution of such contraband would authorize any rational trier of fact to infer that [McNorrill] possessed marijuana, a controlled substance, with intent to distribute." (Citations and punctuation omitted.) *Flemister*, 317 Ga. App. at 752 (1). See *Williams v. State*, 303 Ga. App. 222, 224-225 (2) (692 SE2d 820) (2010); *Mayo v. State*, 277 Ga. App. 282,

---

[4] While McNorrill argues that the State failed to qualify the sheriff's investigator as an expert, McNorrill failed to object on that ground at trial and therefore has waived any objection to the investigator rendering an opinion regarding the marijuana packaging. See *Boring v. State*, 303 Ga. App. 576, 579 (1) (694 SE2d 157) (2010). Furthermore, the State laid a foundation for the investigator's opinion testimony by eliciting testimony about his "couple hundred" encounters with marijuana and its different forms of packaging during the course of his career.

283 (1) (a) (626 SE2d 245) (2006); *Rutledge v. State*, 224 Ga. App. 666, 668 (1) (482 SE2d 403) (1997); *Bowers v. State*, 195 Ga. App. 522, 522 (1) (394 SE2d 141) (1990).

Moreover, in addition to the packaging of the marijuana, the evidence shows that a loaded handgun was found on the driver's seat, bullets were found in McNorrill's pocket, and the victim testified that McNorrill had a handgun that night. This evidence further supported McNorrill's conviction for possession of marijuana with intent to distribute. See *State v. Jackson*, 287 Ga. 646, 652 (2) (697 SE2d 757) (2010) (pointing out that it is "not unusual" for drug dealers to be armed); *Smith v. State*, 335 Ga. App. 742, 744 (2) (782 SE2d 824) (2016) (noting that a "loaded handgun with a bullet in the chamber was found in the front passenger seat" in affirming conviction for possession of drugs with intent to distribute). Conversely, there was no evidence that McNorrill or his co-defendant were drugs users or were under the influence of drugs, and no evidence of any smoking devices, rolling papers, or other paraphernalia associated with drug use found in the car. Accordingly, under the totality of the evidence, a rational jury could reject the alternative hypothesis that the marijuana was for personal use rather than distribution. See *Jackson v. State*, 314 Ga. App. 272, 276 (1) (c) (724 SE2d 9) (2012).

Two cases relied upon by McNorrill, *Hicks v. State*, 293 Ga. App. 830 (668 SE2d 474) (2008); and *Clark v. State*, 245 Ga. App. 267 (537 SE2d 742) (2000), do not require a different result. In *Hicks*, we concluded that the evidence presented at trial supported the reasonable alternative hypothesis that the drugs found in the defendant's car were for personal use rather than distribution, where the only evidence of intent to distribute was that the defendant possessed a pill bottle containing an unidentified number of broken-up pieces of cocaine, and an investigator testified that storing drugs in such a disposable container indicated an intent to sell. 293 Ga. App. at 831-833. We specifically noted, however, that there was no evidence of weapons or of "drug packaging materials such as baggies in the vehicle." Id. at 832. *Hicks* thus is materially distinguishable in light of the loaded handgun and individualized packaging of the marijuana found in the car here.

*Clark* is likewise distinguishable. In *Clark*, we concluded that the evidence was insufficient to prove that the drugs were for distribution rather than personal use, where the police discovered eight bags of an unidentified amount of marijuana in a van with four people inside of it parked behind a restaurant in the middle of the night. 245 Ga. App. at 267-269. The passengers in the van were sitting on or next to several of the bags. Id. at 268. The police also found a cigar on the dashboard of the van that

10

had been cut open with the tobacco removed, which a police officer testified was "consistent with people getting ready to replace the tobacco with marijuana, [to] make a joint." Id. at 267. Given the number of people in the van where the marijuana was found, the unidentified amount of marijuana, the absence of any guns or "drug packaging materials," and the presence of the cigar made into a drug smoking device, *Clark* clearly diverges factually from the situation here. Id. at 269.

As we have emphasized, "the intent with which an act is done is peculiarly a question of fact for determination by the jury. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this." (Citation and punctuation omitted.) *Mayo*, 277 Ga. App. at 283 (1) (a). Given the combined evidence in this case, we conclude that the State met its burden of proving that McNorrill intended to distribute the drugs, and the jury was authorized to find McNorrill guilty beyond a reasonable doubt of possession of marijuana with intent to distribute. *Jackson*, 443 U. S. at 319 (III) (B).[5]

---

[5] McNorrill also argues that because the evidence was insufficient to convict him of possession of marijuana with intent to distribute, the evidence likewise was insufficient to convict him of possession of a firearm during the commission of that drug-related crime. McNorrill's argument is without merit, in light of our conclusion that there was sufficient evidence to convict him of possession of marijuana with intent to distribute.

2. McNorrill next contends that he was denied his constitutional right to effective counsel because his trial counsel had an actual conflict of interest that adversely affected the representation. According to McNorrill, an actual conflict of interest arose because his trial attorney was employed in the same circuit public defender's office as the attorney who represented his co-defendant, and he and his co-defendant had antagonistic interests that precluded them from being represented by attorneys in the same office. We are unpersuaded.

As our Supreme Court has pointed out, "[t]he potential for serious conflicts of interest [exists] when one lawyer represents co-defendants in a criminal proceeding." *Tolbert v. State*, 298 Ga. 147, 148 (2) (a) (780 SE2d 298) (2015), citing *In re Formal Advisory Opinion 10-1*, 293 Ga. 397, 400 (2) (744 SE2d 798) (2013). And

> if it is determined that a single public defender in the circuit public defender's office of a particular judicial circuit has an impermissible conflict of interest concerning the representation of co-defendants, then that conflict of interest is imputed to all of the public defenders working in the circuit public defender office of that particular judicial circuit.

*In re Formal Advisory Opinion 10-1*, 293 Ga. at 399 (1). See *Pryor v. State*, 333 Ga. App. 408, 410 (2) (776 SE2d 474) (2015).

12

But "the mere 'possibility of conflict is insufficient to impugn a criminal conviction.'" *Lytle v. State*, 290 Ga. 177, 178 (2) (718 SE2d 296) (2011), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (IV) (C) (100 SCt 1708, 64 LE2d 333) (1980). Rather, "[t]o prevail on a claim that a conflict of interest worked a denial of the effective assistance of counsel, a defendant like [McNorrill] – one who failed to object to the conflict at trial – must show that 'an actual conflict of interest adversely affected his lawyer's performance.'" (Footnote omitted.) *Tolbert*, 298 Ga. at 149 (2), quoting *Cuyler*, 446 U.S. at 348 (IV) (B). See *State v. Abernathy*, 289 Ga. 603, 604 (1) (715 SE2d 48) (2011); *Pryor*, 333 Ga. App. at 412-413 (2).

> [T]he critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown, and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation.

(Citation omitted; emphasis in original.) *Abernathy*, 289 Ga. at 604-605 (1). Thus, McNorrill had to show that the simultaneous representation of himself and his co-defendant by two lawyers working in the same public defender's office created a

conflict of interest that significantly affected his own lawyer's performance. See id.; *Pryor*, 333 Ga. App. at 412-413 (2).

In reviewing whether McNorrill proved that his trial counsel was laboring under a conflict of interest that adversely affected his counsel's performance, we owe no deference to the trial court's application of the law to the facts. *Tolbert*, 298 Ga. at 151 (2) (a). "We owe substantial deference, however, to the way in which the trial court assessed the credibility of witnesses and found the relevant facts." Id. Mindful of this standard of review, we turn to the record in this case.

While McNorrill and his co-defendant were represented by attorneys in the same trial team at the same circuit public defender's office, there was no evidence of any communications or corroboration between the attorneys regarding this case. Rather, McNorrill's trial counsel testified at the hearing on the motion for new trial that she recalled no such communications or corroboration with the other attorney in her office. Furthermore, trial counsel testified that she felt no constraints in her representation of McNorrill and did not feel that there was any conflict that inhibited her trial performance, and there is nothing in the trial transcript reflecting otherwise. Trial counsel also testified that if a conflict had existed, she would have reviewed the issue with her supervisor, but there had been no need to do so under the

14

circumstances here. Given this record, the trial court was entitled to find that McNorrill failed to show that his trial counsel was laboring under an actual conflict of interest that negatively impacted her pre-trial preparation or her performance during trial.

McNorrill nevertheless argues that an actual conflict of interest arose at one point before trial when the prosecutor offered him a plea conditioned on McNorrill testifying against his co-defendant, thereby causing McNorrill and his co-defendant to have interests that were antagonistic to one another. However, McNorrill's trial counsel testified at the new trial hearing that she fully informed McNorrill of the plea offer, that she told him that it was his decision whether to accept the offer, and that "it [had been] of no account to [her]" whether McNorrill chose to testify against his co-defendant. Trial counsel also testified that McNorrill was very "deferential" to his co-defendant and looked to his co-defendant "for cues . . . in making decisions about what he wanted to do." The trial transcript reflects that when the plea offer was later brought up in open court, McNorrill rejected the offer, stating, "I would take the offer, but I don't want to testify." In light of this combined record evidence, the trial court was entitled to find that any potential conflict arising from the plea offer did not adversely affect the manner in which trial counsel handled the offer or conveyed it

15

to McNorrill, and that McNorrill made his own independent decision not to accept the offer because he did not want to testify at trial.

In sum, as the trial court was authorized to conclude, McNorrill failed to establish that the simultaneous representation of himself and his co-defendant by two public defenders in the same office created an actual conflict of interest that significantly affected his own lawyer's performance before or during trial. See *Abernathy*, 289 Ga. at 604-605 (1); *Lytle*, 290 Ga. at 178-179 (2); *Pryor*, 333 Ga. App. at 413-414 (2); *Johnson v. State*, 320 Ga. App. 161, 165-166 (4) (739 SE2d 469) (2013). It follows that the trial court did not err when it denied McNorrill's motion for new trial on this ground.

3. McNorrill also contends that his trial counsel was ineffective for failing to object to the trial court's jury instruction on possession of marijuana with intent to distribute. We disagree.

Count 5 of the indictment charged McNorrill with violating the Georgia Controlled Substances Act, OCGA § 16-13-30 (j), by possessing marijuana with the intent to distribute. In defining the alleged offense to the jury, the trial court instructed: "The offense charged in count 5 of this indictment is a violation of the Georgia Controlled Substances Act, which provides that it is unlawful for any person

16

to [a] possess, or have under one's control or [b] possess with intent to distribute any quantity of marijuana, which is a controlled substance." According to McNorrill, the trial court's instruction was erroneous because it included a reference to simple possession of marijuana as a violation of the Georgia Controlled Substances Act, and thus could have misled the jury into convicting him of a drug crime different from that charged in the indictment. Consequently, McNorrill contends that his trial counsel was ineffective for failing to object to the instruction.

> While instructing the jury that a crime can be committed in a manner different from that charged in the indictment can constitute reversible error, a reversal is not mandated where, as here, the charge as a whole limits the jury's consideration to the specific manner of committing the crime alleged in the indictment.

(Punctuation and footnote omitted.) *Machado v. State*, 300 Ga. App. 459, 462 (5) (685 SE2d 428) (2009). See *Wheeler v. State*, 327 Ga. App. 313, 319 (3) (758 SE2d 840) (2014). Here, the trial court read the indictment to the jury, instructed the jury that the State had the burden of proving every material allegation of the indictment beyond a reasonable doubt, further instructed the jury that it could find McNorrill guilty if it found beyond a reasonable doubt that he committed the offenses "alleged in the indictment," and provided the indictment to the jury during its deliberations.

17

These instructions, when considered as a whole, cured any potential error in the trial court's instruction on count 5 of the indictment. See *Dugger v. State*, 297 Ga. 120, 123 (6) (772 SE2d 695) (2015); *Faulks v. State*, 296 Ga. 38, 39 (2) (764 SE2d 846) (2014); *Wheeler*, 327 Ga. App. at 319-320 (3); *Machado*, 300 Ga. App. at 462-463 (5). Under these circumstances, McNorrill cannot show that the jury instruction prejudiced his case, and thus cannot succeed on his ineffective assistance claim. See *Gomillion v. State*, 236 Ga. App. 14, 18 (3) (c) (512 SE2d 640) (1999) ("Failure to object to a court's charge[] . . . is not ineffective assistance where the appellant does not show how this prejudiced his case.") (citation and punctuation omitted).

4. Lastly, McNorrill contends that his trial counsel was ineffective for failing to object to the trial court's jury instruction on possession of a firearm during the commission of a crime. Again, we disagree.

OCGA § 16-11-106 (b) (4) provides that a person commits a felony when he possesses a firearm on or within arm's reach of his person during the commission of certain felony drug-related crimes. The trial court instructed the jury on the definition of possession of a firearm during the commission of a crime:

> A person commits the offense of possession of a firearm during the commission of a crime when the person has on or within arm's reach of

18

his person a firearm during the commission of or any attempt to commit a felony, which is . . . any crime involving the possession, or possession with intent to distribute a controlled substance. I charge you marijuana is a controlled substance.

McNorrill argues that the trial court's instruction, by including a reference to possession of marijuana as a potential predicate felony offense for the firearm crime, was an incorrect statement of the law under the facts of this case. He emphasizes that possession of marijuana is only a felony if the amount of marijuana possessed is greater than one ounce, OCGA § 16-13-2 (b), but the amount of marijuana found in the victim's stolen vehicle was less than that amount. Consequently, McNorrill argues, his mere possession of marijuana in this case would not have supported a conviction of possession of a firearm during the commission of a crime, and his trial counsel was ineffective for failing to object to the jury instruction on that basis.

Even if McNorrill's trial counsel was deficient for failing to object to the jury instruction, McNorrill has failed to show how that error was prejudicial. The jury found McNorrill guilty of possession of marijuana with intent to distribute, there was sufficient evidence to support that felony conviction as explained supra in Division 1, and it is undisputed that possession of marijuana with intent to distribute could serve as the predicate felony offense for McNorrill's conviction of possession of a

19

firearm during the commission of a crime under OCGA § 16-11-106 (b) (4). Hence, "there is not a reasonable probability that, if the trial court had omitted the [reference to simple possession of marijuana from the instruction] at [McNorrill's] behest, the outcome of the trial would have been more favorable to him." *Daughtry v. State*, 296 Ga. 849, 859 (2) (g) (770 SE2d 862) (2015). McNorrill therefore cannot succeed on his ineffective assistance claim. Id.

*Judgment affirmed. Boggs, J. concurs. Rickman, J., concurs in judgment only*.