S10U1679. IN RE FORMAL ADVISORY OPINION 10-1.
(744 SE2d 798)

</div>

PER CURIAM.

Responding to a letter from the Georgia Public Defender Standards Council (GPDSC), the State Bar Formal Advisory Opinion Board (Board) issued Formal Advisory Opinion 10-1 (FAO 10-1), in which the Board concluded that the standard for the imputation of conflicts of interest under Rule 1.10 (a) of the Georgia Rules of Professional Conduct applies to the office of a circuit public defender as it would to a private law firm. FAO 10-1 was published in the June 2010 issue of the *Georgia Bar Journal* and was filed in this Court on June 15, 2010. On July 5, 2010, the GPDSC filed a petition for discretionary review which this Court granted on January 18, 2011. The Court heard oral argument on January 10, 2012. For reasons set forth below, we conclude, as did the Board, that Rule 1.10 (a) applies

to a circuit public defender office as it would to a private law firm, and pursuant to State Bar Rule 4-403 (d), we hereby approve FAO 10-1 to the extent it so holds.[1]

1. At the heart of FAO 10-1 is the constitutional right to conflict-free counsel and the construction of Rule 1.10 (a) of the Georgia Rules of Professional Conduct. "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U. S. 261, 271 (101 SCt 1097, 67 LE2d 220) (1981). Indeed, this Court has stated in no uncertain terms that, "Effective counsel is counsel free from conflicts of interest." *Garland v. State,* 283 Ga. 201, 202 (657 SE2d 842) (2008). In keeping with this unequivocal right to conflict-free representation, Rule 1.10 (a) provides as follows:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by *Rule 1.7: Conflict of Interest: General Rule, 1.8(c): Conflict of Interest: Prohibited Transactions, 1.9: Former Client or 2.2: Intermediary.*

(Emphasis in original.) Comment [1] concerning Rule 1.10 defines "firm" to include "lawyers . . . in a legal services organization." Comment [3] further provides "Lawyers employed in the same unit of a legal service organization constitute a firm. . . ."

Under a plain reading of Rule 1.10 (a) and the comments thereto, circuit public defenders working in the circuit public defender office of the same judicial circuit are akin to lawyers working in the same unit of a legal services organization and each judicial circuit's public defender's office[2] is a "firm" as the term is used in the rule. This

---

[1] In FAO 10-1, the Board purported to answer a broader question – whether "different lawyers employed in the circuit public defender office in the same judicial circuit [may] represent co-defendants when a single lawyer would have an impermissible conflict of interest in doing so"– and we asked the parties to address a similar question in their briefs to this Court. That statement of the question, however, is too broad. The real issue addressed by the Board – and addressed in this opinion – is solely a question of conflict imputation, that is, whether Rule 1.10 (a) applies equally to circuit public defender offices and to private law firms. No doubt, the question of conflict imputation under Rule 1.10 (a) is part of the broader question that the Board purported to answer and that we posed to the parties. But whether multiple representations are absolutely prohibited upon imputation of a conflict – even with, for instance, the informed consent of the client or the employment of "screening" measures within an office or firm – is a question that goes beyond Rule 1.10 (a), and it is one that we do not attempt to answer in this opinion. To the extent that FAO 10-1 speaks to the broader question, we offer no opinion about its correctness.

[2] There are 43 circuit public defender offices in Georgia.

construction is in keeping with our past jurisprudence. Cf. *Hung v. State*, 282 Ga. 684 (2) (653 SE2d 48) (2007) (attorney who filed motion for new trial was not considered to be "new" counsel for the purpose of an ineffective assistance of counsel claim where he and trial counsel were from the same public defender's office); *Kennebrew v. State*, 267 Ga. 400 (480 SE2d 1) (1996) (appellate counsel who was from the same public defender office as appellant's trial lawyer could not represent appellant on appeal where appellant had an ineffective assistance of counsel claim); *Ryan v. Thomas*, 261 Ga. 661 (409 SE2d 507) (1991) (for the purpose of raising a claim of ineffective assistance of counsel, "attorneys in a public defender's office are to be treated as members of a law firm . . ."); *Love v. State*, 293 Ga. App. 499, 501, n. 1 (667 SE2d 656) (2008). See also *Reynolds v. Chapman*, 253 F3d 1337, 1343-1344 (11th Cir. 2001) ("While public defenders' offices have certain characteristics that distinguish them from typical law firms, our cases have not drawn a distinction between the two."). Accordingly, FAO 10-1 is correct inasmuch is it concludes that public defenders working in the same judicial circuit are "firms" subject to the prohibition set forth in Rule 1.10 (a) when a conflict exists pursuant to the conflict of interest rules listed therein, including in particular Rule 1.7.[3] That is, if it is determined that a single public defender in the circuit public defender's office of a particular judicial circuit has an impermissible conflict of interest concerning the representation of co-defendants, then that conflict of interest is imputed to all of the public defenders working in the circuit public defender office of that particular judicial circuit. See Restatement (Third) of

---

[3] Rule 1.7 of the Georgia Rules of Professional Conduct provides:

(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

(b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives informed consent confirmed in writing to the representation after:

(1) consultation with the lawyer pursuant to Rule 1.0 (c);

(2) having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation; and

(3) having been given the opportunity to consult with independent counsel.

(c) Client informed consent is not permissible if the representation:

(1) is prohibited by law or these Rules;

(2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or a substantially related proceeding; or

(3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients. The maximum penalty for a violation of this Rule is disbarment.

the Law Governing Lawyers § 123 (d) (iv) ("The rules on imputed conflicts . . . apply to a public-defender organization as they do to a law firm in private practice. . . .").

2. Despite the unambiguous application of Rule 1.10 (a) to circuit public defenders, GPDSC complains that FAO 10-1 creates a per se or automatic rule of disqualification of a circuit public defender office. We disagree. This Court has stated that

> [g]iven that multiple representation alone does not amount to a conflict of interest when *one* attorney is involved, it follows that counsel from the same [public defender office] are not automatically disqualified from representing multiple defendants charged with offenses arising from the same conduct.

*Burns v. State*, 281 Ga. 338, 340 (638 SE2d 299) (2006) (emphasis in original). Here, Rule 1.10 does not become relevant or applicable until *after* an impermissible conflict of interest has been found to exist. It is only when it is decided that a public defender has an impermissible conflict in representing multiple defendants that the conflict is imputed to the other attorneys in that public defender's office. Even then, multiple representations still may be permissible in some circumstances. See, e.g., Rule 1.10 (c) ("A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7: Conflict of Interest: General Rule.). Thus, FAO 10-1 does not create a per se rule of disqualification of a circuit public defender's office prior to the determination that an impermissible conflict of interest exists and cannot be waived or otherwise overcome.

Although a lawyer (and by imputation his law firm, including his circuit public defender office) may not *always* have an impermissible conflict of interest in representing multiple defendants in a criminal case, this should not be read as suggesting that such multiple representation can routinely occur. The Georgia Rules of Professional Conduct explain that multiple representation of criminal defendants is ethically permissible only in the unusual case. See Rule 1.7, Comment [7] ("The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant."). We realize that the professional responsibility of lawyers to avoid even imputed conflicts of interest in criminal cases pursuant to Rule 1.10 (a) imposes real costs on Georgia's indigent defense system, which continually struggles to obtain the resources needed to provide effective representation of poor defendants as the Constitution requires.

See *Gideon v. Wainwright*, 372 U. S. 335 (83 SCt 792, 9 LE2d 799) (1963). But the problem of adequately funding indigent defense cannot be solved by compromising the promise of *Gideon*. See *Garland v. State*, supra, 283 Ga. at 204.

Since FAO 10-1 accurately interprets Rule 1.10 (a) as it is to be applied to public defenders working in circuit public defender offices in the various judicial circuits of this State, it is approved.[4]

*Formal Advisory Opinion 10-1 approved. All the Justices concur.*

DECIDED JULY 11, 2013.

*Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Senior Assistant Attorney General, Michael L. Edwards*, for appellant.

*Paula J. Frederick, General Counsel State Bar, Robert E. McCormack III, Deputy General Counsel State Bar, John J. Shiptenko, Assistant General Counsel State Bar*, for State Bar of Georgia, *Hull Barrett, James B. Ellington*, for appellee.

*Perry & Walters, George P. Donaldson III, Hogue & Hogue, Franklin J. Hogue, Elizabeth P. Bradley, James F. Grubiak, Russell C. Gabriel, J. Scott Key, Stephen B. Bright, Melanie Velez, Gerald R. Weber, Jr., Atteeyah E. Hollie*, amici curiae.

---

[4] Our opinion cites several precedents that concern the constitutional guarantee of the assistance of counsel, and it is only fitting that we think about the constitutional values that Rule 1.10 promotes as we consider the meaning of Rule 1.10. We do not hold that the imputation of conflicts required by Rule 1.10 is compelled by the Constitution, nor do we express any opinion about the constitutionality of any other standard for imputation. Rule 1.10 is a useful aid in the fulfillment of the constitutional guarantee of the right to the effective assistance of counsel, but we do not hold today that it is essential to fulfill the constitutional guarantee. We do not endorse any particular alternative to Rule 1.10 (a), but we also do not foreclose the possibility that Rule 1.10 (a) could be amended so as to adequately safeguard high professional standards and the constitutional rights of an accused – by ensuring, among other things, the independent judgment of his counsel and the preservation of his confidences – and, at the same time, permit circuit public defender offices more flexibility in the representations of co-defendants. As of now, Rule 1.10 is the rule that we have adopted in Georgia, FAO 10-1 correctly interprets it, and we decide nothing more.