NAHMIAS, Justice,
concurring.
Last year this Court noted the difficulties that may be caused by applying the imputed conflict of interest rule, Rule 1.10 (a) of the Georgia Rules of Professional Responsibility found in State Bar Rule 4-102, to all of the lawyers working in a single circuit public defender office. See In re Formal Advisory Opinion 10-1, 293 Ga. 397, 400 (744 SE2d 798) (2013) (‘FAO 10-1”). Yet we adhered to the plain text of Rule 1.10, noting that any alteration of the rule should come by amendment. See id. at 401, n. 4. See generally Rule 5-101 (describing the process for amending the Bar Rules). In another case decided last year, we avoided deciding what we called the “thorny ethical issues” posed by Rule 1.10 (a) when lawyers wish to consult with their law firm’s in-house counsel about potential malpractice claims by a client of the firm. See St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C., 293 Ga. 419, 425-426 & n. 4 (746 SE2d 98) (2013). This time we “encourage [d] those interested in the resolution of these ethical issues to appeal to the State Bar for guidance on, clarification of, and possible amendments to our Rules of Professional Conduct.”
The Court can take neither of those courses today. Unlike in the Hunter, Maclean case, we cannot avoid deciding the professional responsibility issue and leave it to the rule-making (or even to the formal advisory opinion) process to address, because that would take significant time and we need to decide the disqualification question that this case presents. And unlike in FAO 10-1, we cannot simply rely on the plain text of the rules, because the rules do not speak directly to whether a nonlawyer’s conflict of interest must be imputed to the entire law firm for which she works or rather may be addressed through effective screening measures. I therefore join the Court’s opinion authorizing proper screening to prevent the imputation of conflicts as to nonlawyers in some cases, including this one. The Court’s decision accords with the majority view of courts and commentators nationwide, reflects the fact that nonlawyers stand in a different position than lawyers for purposes of the Bar Rules, and is consistent with the text of Rule 5.3, which requires lawyers with managerial or direct supervisory authority over nonlawyers to make “reasonable efforts” to ensure that the nonlawyers’ conduct is compatible with — not necessarily identical to — the professional obligations of the lawyers. Compare Rule 5.1 (requiring lawyers with managerial or direct supervisory authority over other lawyers to *149 make reasonable efforts to ensure that the lawyers conform to the Rules of Professional Conduct).
Decided May 5, 2014.
Michael A. Mills, for appellants.
Insley & Race, Brynda R. Insley, James R Myers, for appellees.
It should be noted, however, that this is yet another case that raises questions about whether Rule 1.10, and in particular its implicit rejection of the use of screening measures to avoid imputed disqualification of an entire law firm when one of their lawyers would be disqualified, should be reconsidered and amended or at least clarified. After all, the rules already allow the use of screening to avoid conflicts imputed from some lawyers — former government lawyers, judges, and arbitrators. See Rules 1.11 (a) and 1.12 (c). And many of the factors that the Court discusses in support of our conclusion that screening measures, rather than imputed disqualification, may be appropriate for nonlawyers also apply to many other lawyers — especially associates. In addition, we should acknowledge that, as in the rest of our economy, it is becoming far less common for lawyers and their nonlawyer assistants to remain with the same firm for an entire career, whether by choice or due to layoffs or merger and dissolution of firms. This Court can continue deciding — or avoiding deciding — the impact of Rule 1.10 on a case-by-case basis, but the process for amending the Bar Rules provides opportunities for greater and broader input from those whose interests may be affected by imputed disqualification as well as consideration of facts and circumstances beyond those presented in the record of a particular case. That seems a preferable way to address these issues.