In the Supreme Court of Georgia

Decided:   November 16, 2015

S15A0777.  THOMAS v. THE STATE.

NAHMIAS, Justice.

Appellant Joseph Andrew Thomas was convicted of malice murder and numerous other crimes in connection with four armed robberies and the shooting death of Robert Stone.  Appellant contends that the trial court erred by denying his pro se motion to substitute trial counsel, and that his trial counsel provided ineffective assistance by failing to obtain a ruling on her motion to withdraw as counsel.  As explained below, we reject these contentions, but we have identified an error in the sentences imposed on Appellant.  We therefore affirm the trial court's judgment in part and vacate it in part.[1]

_____

[1] The crimes occurred between August 24 and September 12, 2009.  On December 8, 2009, Appellant and Jason Lee were indicted together in Richmond County.  Lee was indicted only for crimes occurring on September 12, 2009; on October 27, 2010, he pled guilty to those charges.  On May 24, 2011, Appellant was re-indicted alone for 28 crimes: one count of malice murder and one count of felony murder; four counts of armed robbery and two counts of criminal attempt to commit armed robbery; one count of hijacking a motor vehicle and one count of attempted hijacking; five counts of aggravated assault with a deadly weapon; seven counts of possession of a firearm during the commission of a crime; one count of theft by receiving stolen property; and five counts of possession of a firearm by a convicted felon.  The last five of these charges were later nolle prossed.  Appellant's trial began on June 6, 2011.  On June 10, the trial court granted a directed verdict of acquittal on the theft by receiving count, and the jury found Appellant guilty of the remaining 22

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following.

*Attempted Armed Robbery of Richard Howard and Gregory Smoot*: On August 24, 2009, Howard and Smoot were standing in the parking lot of a business on Deans Bridge Road in Augusta when Appellant and another man drove up in a Buick Skylark. Appellant got out of the car, took a handgun out of the trunk, approached Howard and Smoot, and told them to give him their money. When Howard refused, Appellant fired a shot at the two victims, which missed, and Howard and Smoot ran to a nearby restaurant to call the police. Within an hour, investigators located the Buick abandoned on the side of a road less than a mile away. The car contained clothing matching the descriptions of the robber that Howard and Smoot had given to the police; Appellant's fingerprints were found on the center console and exterior windows; and a wallet containing his social security card was found on the ground nearby.

counts. The felony murder verdict was vacated as a matter of law, and the trial court sentenced Appellant as a recidivist to serve four consecutive life sentences on the malice murder and three of the armed robbery counts, plus an additional 255 consecutive years on the other counts. On June 15, 2011, Appellant filed a motion for new trial, which he amended with new counsel on October 4, 2013, and March 31, 2014. On May 19, 2014, after an evidentiary hearing, the trial court denied the motion in part and granted it in part to address a sentencing issue regarding fines. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2015 term and submitted for decision on the briefs.

Howard and Smoot later identified Appellant in a photo lineup. Based on these facts, Appellant was found guilty of two counts each of attempt to commit armed robbery, aggravated assault, and possession of a firearm during the commission of a crime.

*Armed Robbery and Carjacking of Michael Pettis*: Two weeks later, on September 7, 2009, Pettis drove Appellant, Jason Lee, and Brandon Ross home from a nightclub in his Hummer. Around 3:00 a.m., Pettis pulled into Appellant's apartment complex on Killingsworth Road, and Lee and Ross got out. Appellant, who remained seated behind Pettis, then pulled out a revolver and pointed it at Pettis. Pettis jumped out of the Hummer and tried to run away, but Appellant chased after him, shooting as they ran. Appellant caught Pettis in a stairwell and marched him back to the Hummer at gunpoint. Appellant went through Pettis's pockets and took $20, while Lee and Ross watched from the sidewalk. Pettis then punched Appellant and ran away again; Appellant drove off in the Hummer. Pettis later identified Appellant in a photo lineup. Based on these facts, Appellant was found guilty of armed robbery, aggravated assault, hijacking a motor vehicle, and possession of a firearm during the commission of a crime.

*Armed Robbery and Attempted Carjacking of Hamilton Aigbogun*: Three days later, on the afternoon of September 10, 2009, Aigbogun, a cable company service technician, was preparing to install cable at a residence on Second Avenue. As he unloaded his tools from the company van, Appellant and another man approached. Appellant pointed a revolver at Aigbogun and demanded his wallet, personal cell phone, and company cell phone; Aigbogun complied. Appellant demanded the keys to the van, but then several other people walked past, talking to Appellant. In response, Appellant said "go about your business," and did not take the keys when Aigbogun offered them. Instead, Appellant and the other man walked away. Aigbogun later identified Appellant in a photo lineup. Based on these facts, Appellant was found guilty of armed robbery, attempted hijacking of a motor vehicle, and possession of a firearm during the commission of a crime.

*Murder of Robert Lee Stone, Jr.*: Around 9:30 p.m. on the same day, Stone, who was a truck driver, stopped at a convenience store on Gordon Highway to buy an ice cream sandwich. Shortly after he walked out of the store, Stone was shot at repeatedly, and two shots hit him in the chest, killing him. Two eyewitnesses described the shooter as a black man wearing a yellow shirt

4

who ran away from the scene; they both later identified the shooter as the man wearing a yellow shirt who was shown in a video from the store's surveillance camera peering into the store shortly before the shooting. Two other witnesses saw Appellant wearing a yellow shirt when they spoke with him near the store shortly before the shooting, and one of them identified Appellant as the man in the video. Based on these facts, Appellant was found guilty of malice murder, felony murder, and possession of a firearm during the commission of a crime.

*Armed Robbery of Rodney Burns and Patrick Boatner*: Two nights later, on September 12, 2009, Burns and Boatner stopped at an ATM on Deans Bridge Road to withdraw cash. As they were leaving, Appellant and Lee approached, claiming that their car would not start and asking for a ride home. Burns and Boatner agreed; all four men got into Boatner's car; and Appellant directed Burns, who was driving, to a neighborhood of vacant homes on Memory Drive. When Burns stopped the car there, Lee, who was sitting behind Burns, held a sawed-off shotgun to Burns's head, and Appellant, who was seated behind Boatner, held a handgun to Boatner's head. They demanded money. Burns handed Lee his cell phone, but when the victims denied having any money, Appellant and Lee fired their guns, hitting Boatner in the chest and shoulder but

5

missing Burns. Appellant, Lee, and Boatner got out of the car, while Burns grabbed his own gun from under the car seat and began to shoot at the two robbers. Boatner threw $4,700 on the ground and dove back into the car as Burns sped away. They later identified Appellant and Lee in photo lineups. Based on these facts, Appellant was found guilty of two counts each of armed robbery, aggravated assault, and possession of a firearm during the commission of a crime.

Appellant was arrested on September 15, 2009, driving the same Buick Skylark that he had abandoned after the crimes on August 24 and possessing a 9mm pistol.

*The Trial*: At his trial in June 2011, Appellant testified that he had argued with Pettis over a girl and struck him, but denied any knowledge of or involvement in other crimes. Appellant also called five other witnesses including Lee, his former co-indictee and alleged accomplice in the September 12 crimes. Lee testified that Appellant was not with him on the night of September 12, and he described the events of that night as a drug deal gone wrong between Burns, Boatner, and a man named Antonio Willis.

Appellant does not dispute the legal sufficiency of the evidence supporting

his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. As mentioned in footnote 1 above, Appellant and Jason Lee were originally indicted together for the September 12 crimes, with Appellant charged with the other crimes as well, and both men were represented by lawyers from the Augusta Judicial Circuit's Public Defender's Office. On May 14, 2010, Appellant's trial counsel filed a motion to withdraw on the ground that a conflict of interest could arise if the State called Lee to testify against Appellant. The trial court never ruled on that motion. On October 27, 2010, Lee pled guilty to robbery and aggravated assault and was sentenced to serve 13 concurrent years for each crime. On May 3, 2011, Appellant filed a pro se motion to substitute

his counsel on the ground of ineffective assistance. On May 24, Appellant was re-indicted alone, and on June 6, the first day of his trial, the court denied Appellant's pro se motion.

(a) Appellant contends first that the trial court erred in denying his pro se motion to substitute counsel, which, he now asserts, resulted in his being represented at trial by a lawyer who had a conflict of interest because she worked in the same public defender's office as Lee's lawyer. In support of this contention, Appellant notes that this Court explained (two years after his trial) that

> if it is determined that a single public defender in the circuit public defender's office of a particular judicial circuit has an impermissible conflict of interest concerning the representation of co-defendants, then that conflict of interest is imputed to all of the public defenders working in the circuit public defender office of that particular judicial circuit.

In re Formal Advisory Opinion 10-1, 293 Ga. 397, 399 (744 SE2d 798) (2013) (FAO 10-1).

Pretermitting whether Appellant's pro se motion, filed while he was represented by counsel, was even cognizable, see Tolbert v. Toole, 296 Ga. 357, 363 (767 SE2d 24) (2014), the motion did not allege any conflict of interest

8

issue. Instead, the motion was based solely on allegations that his trial counsel had provided ineffective assistance by failing to communicate with him and refusing to follow his wishes. Appellant has abandoned those complaints on appeal, and his motion did not raise and preserve for appeal the conflict of interest claim he now asks us to decide. "'It is a general principle that a party cannot assert one ground in support of a plea, motion, or objection in the trial court and then expect the appellate court to review an entirely new ground to which he has switched on appeal.'" Coleman v. State, 163 Ga. App. 173, 175 (293 SE2d 395) (1982) (citation omitted). See also Hulett v. State, 296 Ga. 49, 58 (766 SE2d 1) (2014) ("[A]n appellant is 'limited on appeal to the grounds which he properly presented in the trial court.'" (citation omitted)). Accordingly, this enumeration of error fails.

(b) Appellant also contends that his trial counsel rendered ineffective assistance by failing to obtain a ruling on her motion to withdraw. Unlike Appellant's later pro se motion, trial counsel's motion was based on a possible conflict of interest due to the representation of Appellant's then co-

indictee by another lawyer in her office.[2]  To prevail on this claim, Appellant must show that his lawyer's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable to him.  See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); Woodard v. State, 296 Ga. 803, 814-815 (771 SE2d 362) (2015).

Although at the time trial counsel filed her motion there was the potential that the representation of Appellant and his co-indictee by lawyers from the same public defender's office would cause a conflict of interest, by the time Appellant's trial began, there was no conflict.  The record shows that when trial counsel filed her motion in May 2010, she presumed that the State would call Lee to testify against Appellant at trial.  Before the trial began in June 2011, however, the situation changed significantly: Lee pled guilty and was sentenced; Appellant was re-indicted alone; the prosecutor notified Appellant's counsel that the State would not call Lee at trial; and counsel decided that Appellant would

---

[2]  Trial counsel's motion to withdraw cited a version of the State Bar Formal Advisory Opinion Board's proposed opinion addressing conflicts of interest within a public defender's office with regard to the representation of co-defendants. The version of that formal advisory opinion that the Board finally promulgated was approved by this Court, with some limitation and clarification, in 2013.  See FAO 10-1, 293 Ga. at 397-398 & n.1.

call Lee as a witness because Lee's testimony would benefit his defense. Appellant then called Lee as a defense witness, and Lee corroborated Appellant's testimony that he was not present for the crimes against Burns and Boatner. Under these circumstances, had trial counsel pursued a ruling on her motion to withdraw at trial, the court would have been entitled to deny the motion for failure to establish that an impermissible conflict of interest existed at that time. See FAO 10-1, 293 Ga. at 400 (explaining that the imputed conflict rule "does not become relevant or applicable until *after* an impermissible conflict of interest has been found to exist"). See also Burns v. State, 281 Ga. 338, 340 (638 SE2d 299) (2006) ("[C]ounsel from the same [public defender's office] are not automatically disqualified from representing multiple defendants charged with offenses arising from the same conduct."). Thus, Appellant has failed to show that his trial counsel was ineffective. See Moore v. State, 293 Ga. 676, 679 (748 SE2d 419) (2013).

3. Although we reject Appellant's enumerations of error, we have identified an error regarding the failure to merge certain counts for sentencing. See Hulett v. State, 296 Ga. 49, 54 (766 SE2d 1) (2014) (explaining that appellate courts may consider merger errors sua sponte). The five aggravated

11

assault with a deadly weapon counts involving victims Howard, Smoot, Pettis, Burns, and Boatner (Counts 3, 4, 9, 19, and 22) should have been merged into the armed robbery and attempted armed robbery convictions involving those victims (Counts 1, 2, 8, 18, and 21).  See Long v. State, 287 Ga. 886, 888-889 (700 SE2d 399) (2010); Garland v. State, 311 Ga. App. 7, 13 (714 SE2d 707) (2011).  Thus, Appellant's convictions and sentences on all five of the aggravated assault counts must be vacated.

Judgment affirmed in part and vacated in part.  All the Justices concur.