302 Ga. 404
FINAL COPY

S17A1036.  WILLIAMS v. THE STATE.

NAHMIAS, Justice.

Appellant Brodrick Williams was convicted of malice murder, armed robbery, and a firearm offense in connection with the shooting death of Daniel McGee.  Appellant contends that the evidence presented at trial was insufficient to support his convictions and that he was deprived of his right to conflict-free counsel.  We conclude that the evidence was legally sufficient to support Appellant's murder and firearm convictions, but not his armed robbery conviction.  We also conclude that Appellant has not shown that his trial counsel had an actual conflict of interest that adversely affected counsel's representation. We therefore affirm in part and reverse in part the judgment of the trial court.

1.  (a)  Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed the following.  In the early morning hours of December 9, 2008, Tavaris Samuels, who was 20 years old,

was driving in his mother's car through Harrisburg, Georgia, with Appellant, who was 16, Tanya Landers, and Sierra Burns. Landers, who was Samuels's girlfriend, rode in the passenger seat while Appellant and Burns rode in the back seat. Appellant was carrying a 9-millimeter pistol, and Samuels was carrying a .22-caliber revolver. When the car passed Daniel McGee, who was riding his bicycle down Starnes Street, Landers pointed out the gold chain necklace that McGee was wearing. Samuels turned the car around, rolled down his window, and stopped the car beside McGee. Landers asked McGee where he got his necklace. While McGee answered, Appellant told Samuels that he wanted the chain, and Samuels replied, "I hope you know what you're getting into."

Appellant then got out of the car, walked over to McGee, pointed his gun at McGee, and told McGee to give him the chain. McGee instead grabbed Appellant by the shirt, and the two started tussling. Samuels, Landers, and Burns, who remained in the car, heard a gunshot. After one of the women encouraged Samuels to help Appellant, Samuels got out of the car with his gun drawn, walked over to where Appellant and McGee continued to grapple, and

2

fired a shot into McGee's head.[1] McGee fell to the ground. Appellant then went through McGee's pockets before he and Samuels returned to the car and drove away. While they were driving off, Appellant told the others that he had dropped the clip from his gun. Samuels later threw one or both of the guns into a river.

A couple hours after the shooting, the Richmond County Sheriff's Department received a call that a man appearing to be drunk had fallen off his bicycle. A deputy sheriff responded and found McGee on the ground next to his bike, which did not have a seat. McGee had great difficulty responding to the deputy's questions, but eventually he mumbled his name and shook his head "yes" when the deputy asked if he had fallen off the bike. The deputy called an ambulance, and McGee was taken to a hospital, where he was placed on mechanical ventilation and life support. He died later that day. A .22-caliber bullet was found in McGee's brain; the cause of his death was a single shot to the head. Investigators determined that the shooting occurred about a block from where McGee was found; he had attempted to ride his bicycle after

---

[1] Samuels initially testified that he intended to shoot the ground by their feet to "scare them apart" and the bullet ricocheted and hit McGee in the head, but Samuels eventually admitted that he pointed his gun at McGee and fired the fatal shot.

3

Appellant and his friends fled, but only made it a short distance. At the shooting location, investigators found blood, vomit, a magazine for a 9-millimeter pistol, McGee's bicycle seat, his black cap, and the charm pendant from his necklace. The broken necklace chain was found at the hospital with McGee's clothing.

About ten weeks later, Samuels was arrested on other charges, and he gave a statement to law enforcement regarding McGee's murder, which led to Appellant's arrest. In a post-arrest interview, the audio recording of which was played at trial, Appellant admitted that he got out of the car, pointed his gun at McGee, and said, "Empty out your pockets"; that his clip fell out of the gun when he was tussling with McGee; and that Samuels then got out of the car and shot McGee in the head.

(b) Appellant and Samuels were indicted together for malice murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime. Prior to trial, on January 13, 2010, Samuels pled guilty to all of those charges as well as robbery under a separate indictment, and he agreed to testify against Appellant as part of a negotiated plea agreement.[2] On

---

[2] Samuels was sentenced to life in prison for the murder plus twenty years concurrent for the armed robbery, ten years concurrent for the separate robbery, and five years consecutive for the firearm offense. In exchange for his guilty plea and testimony, the State agreed to dismiss some of

February 23, 2010, after learning of Samuels's plea deal, Appellant's trial counsel moved to withdraw from further representation because both Appellant and Samuels were represented by attorneys from the Augusta Judicial Circuit Public Defender's Office and such representation might constitute a conflict of interest under a proposed formal advisory opinion regarding the Georgia Rules of Professional Conduct. After a hearing, the trial court denied the motion. Before trial began on June 1, 2010, Appellant's counsel renewed the motion to withdraw, and the trial court again denied it. Samuels testified against Appellant at trial. Appellant did not testify. On June 3, the jury found Appellant guilty on all charges.[3]

2. Appellant argues that the evidence summarized above was insufficient to support his convictions.

_____

the charges against Samuels from the separate robbery indictment and to write a favorable letter on his behalf to the parole board. Samuels also retained the right to file a motion to remold his sentence to suspend his consecutive five-year sentence.

[3] The trial court sentenced Appellant to serve two terms of life in prison, running concurrently, for malice murder and armed robbery, and a consecutive term of five years for the firearm offense. The felony murder verdict was vacated by operation of law. On June 24, 2010, Appellant filed a timely motion for new trial with new counsel, which he amended on May 6 and November 30, 2011. After an evidentiary hearing on February 21, 2013, the trial court denied the motion on March 15, 2016. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

When we consider the legal sufficiency of the evidence, we must "put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." White v. State, 293 Ga. 523, 523 (1) (753 SE2d 115) (2013) (citation omitted). Instead, we must view the evidence in the light most favorable to the verdict, id., and we inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). With this standard in mind, we now turn to the sufficiency of the evidence in this case.

Walker v. State, 296 Ga. 161, 163 (766 SE2d 28) (2014).

(a)    As to the convictions for malice murder and possession of a firearm during the commission of a crime, the evidence showed that Appellant was carrying a pistol, told Samuels that he wanted the gold chain before he approached McGee, and pointed his gun at McGee and demanded the chain; after McGee and Appellant began fighting, Samuels and the two women in the car heard a gunshot. Samuels then got out of the car with his own gun drawn, walked over to where Appellant and McGee were fighting, and fired the fatal shot into McGee's head. Appellant then went through McGee's pockets and left with Samuels. From this evidence, a rational jury could find beyond a reasonable doubt that Appellant was guilty of malice murder and firearm

6

possession as a party with Samuels, particularly given Appellant's own possession of a gun and attempt to rob and apparently to shoot McGee before Samuels came to Appellant's assistance. See id.; OCGA § 16-2-20 (defining parties to a crime); Dublin v. State, 302 Ga, 60, 65 (3) (805 SE2d 27) (2017) ("'Whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed.'" (citation omitted)).

(b) There was not, however, sufficient evidence to support Appellant's armed robbery conviction. "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a). To prove the "taking" element of armed robbery, the State must show both that the defendant caused the "slightest change of location" of the property allegedly taken and that "complete dominion" over the property was transferred at least temporarily from the victim to the defendant. Gutierrez v. State, 290 Ga. 643, 644 (723 SE2d 658) (2012). The indictment in this case alleged that Appellant took "a chain and charm" from McGee. But the chain was found with McGee's clothing at the hospital, and the necklace's

pendant was found on the ground at the shooting site. Because the chain was still with McGee's clothing, there is no evidence that Appellant ever moved the chain or exercised control over it. And while the movement of the pendant from the chain around McGee's neck to the ground might satisfy the slight change of location requirement, there is no evidence that Appellant ever had complete dominion over the pendant.

Because the evidence showed that McGee refused to comply when Appellant demanded the chain, this case is different from cases like Gutierrez, where the defendant's complete dominion over the cash within the victims' cash register was demonstrated when the victims opened and moved the cash drawer after they were directed to do so by the armed intruder. See Gutierrez, 290 Ga. at 645. See also State v. Watson, 239 Ga. App. 482, 486 (520 SE2d 911) (1999) ("At the time the barber obeyed King's order at gunpoint to drop the money, King exercised complete control over not only the barber but all items within the barber's control, including the money dropped at King's direction."). There also is no evidence that Appellant ever successfully grabbed the chain or pendant away from McGee and moved either item himself, making this case different from cases like Harris v. State, 334 Ga. App. 299 (779 SE2d 83) (2015), where

8

the evidence showed that the defendant snatched the victim's necklace from his neck and carried it 30 yards away before dropping it. See id. at 300. See also Igle v. State, 223 Ga. App. 498, 500 (478 SE2d 622) (1996) (holding that the victim's testimony that the gunman grabbed the stolen box and then dropped it was sufficient to demonstrate movement and dominion).

Accordingly, we reverse Appellant's conviction for armed robbery.[4]

3.      Appellant argues that his constitutional right to counsel was violated because his trial counsel was not permitted to withdraw after Samuels, who was represented by an attorney from the same public defender's office, entered a negotiated guilty plea and agreed to testify at Appellant's trial. See U. S. Const., Amend. VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XIV. "One component of the right to the effective assistance of counsel is the right to representation that is free of actual conflicts of interest." Edwards v. Lewis, 283 Ga. 345, 348 (658 SE2d 116) (2008). To show a violation of his right to counsel on this ground,

---

[4] We note that Appellant could have been charged with — or the jury could have been instructed on the possibility of returning a verdict for — *attempted* armed robbery, for which the evidence was readily sufficient, although such a conviction would have carried a lesser sentence than the sentence for the completed crime. See OCGA §§ 16-4-1 (defining criminal attempt); 16-4-3 ("A person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime without being specifically charged with the criminal attempt in the accusation, indictment, or presentment."); 16-4-6 (providing the sentence for an attempted crime). The State, however, sought only a conviction for a completed armed robbery.

9

Appellant must establish an actual conflict of interest. See Cuyler v. Sullivan, 446 U. S. 335, 349 (100 SCt 1708, 64 LE2d 333) (1980) ("[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance," not just "a mere theoretical division of loyalties." Mickens v. Taylor, 535 U. S. 162, 171, 172 n.5 (122 SCt 1237, 152 LE2d 291) (2002). See also State v. Abernathy, 289 Ga. 603, 607 (715 SE2d 48) (2011) ("[I]n order to establish ineffective assistance arising from a conflict of interest, a defendant must show the existence of an actual conflict that adversely affected counsel's performance.").[5]

When defense counsel advises the trial court before or at trial that he is laboring under an actual conflict of interest, the court usually must defer to that

_____

[5] The question of whether counsel's representation of the defendant was affected is different from the question of whether the outcome of the trial was affected, which is the issue in most ineffective assistance of counsel cases, see Strickland v. Washington, 466 U. S. 668, 684 (104 SCt 2052, 80 LE2d 674) (1984). Once a defendant shows that an actual conflict of interest adversely affected his counsel's representation, he is entitled to a new trial without the need to show actual prejudice. See Holloway v. Arkansas, 435 U. S. 475, 487-491 (98 SCt 1173, 55 LE2d 426) (1978). See also Edwards, 289 Ga. at 351 ("[T]he critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*." (emphasis in original)).

10

representation and appoint new counsel for the defendant, as the attorney is in the best position to be aware of conflicting interests and makes the representation as an officer of the court. See Holloway v. Arkansas, 435 U. S. 475, 485-486 (98 SCt 1173, 55 LE2d 426) (1978). See also Smith v. Anderson, 689 F2d 59, 62-63 (6th Cir. 1982) ("Due to the attorney-client privilege, counsel for the defendant is normally the individual best able to evaluate whether he may represent more than one defendant with his effectiveness unimpaired by the duality of his trial allegiance. Accordingly, the rule developed by the federal courts in this area afford[s] the trial attorney's judgment near decisive weight in the calculus of conflict when counsel's perception of a conflict is brought to the court's attention.").

The trial court may, however, "explor[e] the adequacy of the basis of defense counsel's representation regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client." Holloway, 435 U. S. at 487. If the trial court does not determine that no real conflict of interest exists but still denies a request for new counsel based on an attorney's representation that a conflict of interest exists, reversal is required. See Mickens, 535 U. S. at 167 ("Holloway . . . creates an automatic

11

reversal rule only [explaining that reversal of a conviction is automatic] where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."); United States v. Punch, 722 F2d 146, 151 (5th Cir. 1983) (granting a new trial because after defense counsel timely asserted a conflict of interest, the district court did not take "'adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel'" (quoting Holloway, 435 U. S. at 484)).

In this case, however, Appellant's trial counsel did not represent that he was laboring under a conflict of interest. In his written motion to withdraw, counsel said only that his office represented both Appellant and Samuels and that Samuels had pled guilty and was expected to testify at trial against Appellant. He then explained that a proposed State Bar formal advisory opinion had indicated that conflicts of interest were to be imputed to lawyers in a circuit public defender's office like they were to lawyers in a law firm.[6]

---

[6] The proposed formal advisory opinion was later approved by this Court — with important limitations and clarifications — in Formal Advisory Opinion No. 10-1, 293 Ga. 397, 400 (744 SE2d 798) (2013). The opinion interprets Rule 1.10 (a) of the Rules of Professional Conduct for Georgia lawyers, which says that conflicts of interest are imputed to lawyers "associated in a firm," to apply to lawyers in a public defender's office. Rule 1.7, the general conflict of interest rule, says that a lawyer cannot ethically "represent or continue to represent a client if there is a significant risk that . . . the lawyer's duties to another client . . . will materially and adversely affect the representation of the client[.]"

12

At the hearing on the motion, counsel argued that the proposed formal advisory opinion, "if taken at face value[,] would require our withdrawal from the case when in instances like this where the . . . co-defendant was represented by an attorney in our office and has pled guilty and will be testifying in the case." Trial counsel again did not assert that his representation of Appellant might be adversely affected in any way, such as by limiting his ability to cross-examine Samuels or raise defenses for Appellant. Compare Holloway, 435 U. S. at 476 (explaining that the three co-defendants "made timely motions for appointment of separate counsel, based on the representations of their appointed counsel that, because of confidential information received from the codefendants, he was confronted with the risk of representing conflicting interests"); Smith, 689 F2d at 60-61 (quoting counsel's statement to the trial court that his two clients' defenses differed and so he "would not be able to properly defend both of them in the same action"); Punch, 722 F2d at 149 (quoting counsel's explanation to the court that his clients had inconsistent defenses). And in renewing the motion to withdraw on the first day of trial, Appellant's counsel said that it was based only "upon the [public defender's office's] representation of the co-defendant, who may or may not testify at

trial."[7]

"Holloway requires state trial courts to investigate timely objections to multiple representation[s]." Cuyler, 446 U. S. at 346. The trial court in this case held a hearing on the motion to withdraw, and it considered defense counsel's only argument — that under the proposed formal advisory opinion, his continued representation of Appellant was prohibited. The court denied the motion because it was unconvinced that representation of co-defendants by a single public defender's office automatically creates a disqualifying conflict of interest. The court's ruling, although it may have warranted a more thorough explication, was not incorrect. See Mickens, 535 U. S. at 178 (Kennedy, J., concurring) ("The constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, not on whether the trial judge should have been more assiduous in taking prophylactic measures.").

That attorneys from one public defender's office were representing

----

[7] To be sure, an attorney's representation that he faces a conflict of interest need not be detailed, particularly if the attorney must be vague to protect confidential information. See McFarland v. Yukins, 356 F3d 688, 703 (6th Cir. 2004) ("Holloway does not require counsel to disclose trial strategy or to breach his duty of loyalty to either client in order to substantiate the existence of a conflict[.]"). Counsel here, however, did not even suggest that his representation of Appellant could actually be affected by his office's representation of Samuels.

Appellant and Samuels was not sufficient, standing alone, to demonstrate an impermissible conflict of interest. Indeed, the advisory opinion expressly states that such lawyers are not automatically disqualified; rather, the trial court must determine if, because of the imputed joint representation, "an impermissible conflict of interest exists and cannot be waived or otherwise overcome." Formal Advisory Opinion No. 10-1, 293 Ga. 397, 400 (744 SE2d 798) (2013). Put another way, the imputed conflict rule "does not become relevant or applicable until *after* an impermissible conflict of interest has been found to exist" — or, in this context, has been represented to exist by counsel without contrary findings by the trial court. Id. (emphasis in original). See also Thomas v. State, 298 Ga. 106, 111-112 (779 SE2d 616) (2015).[8]

Not only did Appellant's counsel not represent to the court before trial that a conflict of interest existed that could adversely affect his representation,

_____

[8] As the Supreme Court said in Cuyler:
Holloway reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.
Cuyler, 446 U. S. at 348 (citation omitted).

counsel's conduct during the trial demonstrated that there was no actual conflict of interest that adversely affected his representation of Appellant. Such a conflict may be shown, for example,

> where counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict; where counsel negotiates a plea bargain for more than one defendant in a case conditioned on acceptance of the plea by all such defendants; or where one of the State's witnesses was a current client of defense counsel in an unrelated criminal matter, thereby constraining counsel's ability to cross-examine the witness.

Abernathy, 289 Ga. at 605 (citations omitted). See also Edwards, 283 Ga. at 350 (holding that an actual conflict of interest existed when defense counsel did not pursue a jury array issue due to conflicting interests); Burns v. State, 281 Ga. 338, 341 (638 SE2d 299) (2006) (explaining that an actual conflict of interest may exist when the co-defendants present antagonistic defenses at trial).

Nothing in the record indicates that Appellant's counsel bypassed any meritorious defenses, that Samuels's plea bargain was negotiated at the expense of Appellant, or that counsel's ability to cross-examine Samuels was constrained in any way. In fact, Appellant's counsel conducted a vigorous cross-examination, highlighting Samuels's past convictions and inconsistent statements to the police. See Pryor v. State, 333 Ga. App. 408, 413 (776 SE2d

16

474) (2015) (noting that the allegedly conflicted public defender did not "pull any punches" in cross-examination). Compare Holloway, 435 U. S. at 479-481 (explaining that the attorney who represented three co-defendants who all testified was unable to cross-examine them or object to their testimony to protect his other clients' interests and could not subject them to a direct examination that might elicit information that hurt his other clients). There also is no evidence that Appellant's counsel shared any privileged or confidential information with or obtained such information from the attorney representing Samuels. See Lytle v. State, 290 Ga. 177, 178-179 (718 SE2d 296) (2011) (noting that the defendant's public defender did not share any information about the defendant's case with the public defenders of his co-defendants). Under these circumstances, Appellant has not established a successful ineffective assistance of counsel claim.

Judgment affirmed in part and reversed in part. All the Justices concur.

Decided October 30, 2017.

Murder. Richmond Superior Court. Before Judge Blanchard.

Robert L. Persse, Amy L. Ihrig, for appellant.

Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.