NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 3, 2026

S26A0222. SANDERS v. THE STATE.

COLVIN, Justice.

Appellant Joshua Sanders appeals his convictions for malice murder and related offenses in connection with the shooting deaths of Latorey Harden ("Latorey") and her mother, Pamela Harden ("Pamela").[1] The trial evidence, which included surveillance footage

---

[1] The crimes occurred on January 6, 2022. On April 21, 2022, a Toombs County grand jury indicted Appellant for malice murder (Counts 1 and 7), felony murder (Counts 3 and 9), possession of a firearm during the commission of a felony (Counts 2, 4, 6, 8, 10, and 12), aggravated assault (Counts 5 and 11), cruelty to children in the first degree (Counts 13 and 14), and theft by taking (Count 15). A jury trial was held from May 22 through 25, 2023, and the jury found Appellant guilty of all counts. The trial court sentenced Appellant to serve consecutive terms of life in prison without the possibility of parole for each count of malice murder (Counts 1 and 7), consecutive terms of five years in prison for each of two counts of possession of a firearm during the commission of a felony (Counts 2, 8), concurrent terms of 20 years in prison for each count of cruelty to children in the first degree (Counts 13 and 14), and a concurrent term of five years in prison for theft by taking (Count 15). The trial court merged the remaining counts, although the counts of felony murder (Counts 3 and 9) were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371–72 (1993). Appellant timely filed a motion for new trial

of the shooting, eyewitness testimony, and testimony from Appellant himself, showed that, following a brief, tumultuous, romantic relationship between Appellant and Latorey, Appellant shot and killed Latorey and Pamela outside of Latorey's residence in Vidalia.

On appeal, Appellant raises one enumeration of error. He claims that motion-for-new-trial counsel was constitutionally ineffective for failing to raise a claim that trial counsel was ineffective for failing to "shape" and "guide" Appellant's testimony on direct examination, which Appellant contends reflected negatively on his character. But this claim, "which simply recast[s] his trial-counsel ineffectiveness claim[ ] as [a] motion-for-new-trial ineffectiveness claim[ ], [is] procedurally barred." *Pugh v. State*, 318 Ga. 706, 723 (2024) (quotation marks omitted). Appellant's argument on appeal focuses on *trial counsel's* ineffective assistance

---

on May 26, 2023, and amended the motion through new counsel on December 30, 2024, and February 18, 2025. Following a hearing, the trial court denied Appellant's motion for new trial on August 12, 2025. Appellant timely filed a notice of appeal directed to this Court. The case was assigned to this Court's term beginning in December 2025 and was submitted for a decision on the briefs.

in conducting Appellant's direct examination, rather than on *motion-for-new-trial counsel's* decision not to pursue an ineffective-assistance-of-trial-counsel claim regarding Appellant's direct examination. And Appellant requests a remand in this case only to conduct a hearing "to determine if defense counsel" performed deficiently, not to determine whether motion-for-new-trial counsel was deficient. As we have "consistently held,"

> a defendant cannot resuscitate a specific claim of ineffective assistance of trial counsel that was not raised at the motion for new trial stage by recasting the claim on appeal as one of ineffective assistance of motion-for-new-trial counsel for failing to raise the specific claim of trial counsel's ineffectiveness.

Id. at 723–24 (quotation marks omitted). Accordingly, this claim fails.[2]

*Judgment affirmed. All the Justices concur.*

---

[2] If Appellant "wishes to pursue a claim that his post-conviction counsel was ineffective, he must do so through a petition for a writ of habeas corpus." Id. at 724 n.15 (cleaned up).

PETERSON, Chief Justice, concurring.

I join the decision of the Court in full; it is a faithful application of a long-standing rule that we created requiring claims of ineffectiveness of trial counsel to be raised on a motion for new trial. I write separately to point out the harm that rule has caused our criminal justice system, and to encourage the General Assembly to change it.

Georgia's post-conviction litigation system is a mess. It's a mess in large part because of a series of well-meaning but short-sighted decisions this Court made over the course of several decades. Those decisions had a worthy goal: seeking to ensure that indigent defendants were entitled to appointed counsel for litigating claims of ineffective assistance of counsel. But the means we used to pursue that goal have made things worse, not better.

These means were to require that ineffectiveness claims be raised in a motion for new trial. See *Simpson v. State*, 250 Ga. 365, 367 (1982). In *Simpson,* we cited no legal authority in support of this

rule, which eventually was refined into a requirement that ineffectiveness claims "be raised before appeal if the opportunity to do so is available[.]" *Glover v. State*, 266 Ga. 183, 184 (1996) (emphasis omitted). This, in turn, led us to require that new counsel be appointed to litigate the motion for new trial, as trial counsel cannot litigate their own ineffectiveness. See *Garland v. State*, 283 Ga. 201 (2008) (holding that because an appellant must raise ineffectiveness on a motion for new trial, and trial counsel cannot do that, new counsel must be appointed); *Smith v. State*, 255 Ga. 654, 656 (1986) (stating that in *Castell v. Kemp*, 254 Ga. 556 (1985), we "sustained the trial court in finding that the ethical prohibition against a lawyer acting also as a witness precluded his presenting a claim of ineffective assistance of counsel concerning the trial which he, himself, had conducted"). And then our subsequent interpretation of the Georgia Rules of Professional Conduct means that the new counsel cannot come from the same circuit public defender's office that handled the trial. See *In re Formal Advisory Opinion 10-1*, 293 Ga. 397 (2013) ("*In re FAO 10-1*"). See also *Evans*

5

*v. State*, 322 Ga. 652, 682 (2025) (Peterson, C.J., concurring) (noting that *In re FAO 10-1* "has caused serious problems for the criminal justice system in Georgia" and proposing that the Court consider adopting a new Rule of Professional Conduct regarding conflict imputation for public defender offices).

The result of all of this is that we have backed into a system that prioritizes ineffectiveness claims (which have a low success rate) in exchange for imposing serious costs. Substituting new counsel and then litigating a motion for new trial (including an evidentiary hearing) inevitably takes materially longer to do, even under the best of circumstances.[3] Moreover, preventing trial counsel from litigating (or at least being involved in) the appeal makes much harder the litigation of claims of preserved trial court error (which have a higher success rate). See James C. Bonner Jr., *The Decline,*

---

[3] And the circumstances often are not the best; delays in substitution of new counsel, and repeated substitutions of new counsel, often results in cases being left adrift for years. See, e.g., *Owens v. State*, 303 Ga. 254, 254 n.1 (2018) (noting that, after motion for new trial was filed, case involved "eight years of delay in preparing the trial transcript and shuffling of Appellant's appellate counsel" before an amended motion for new trial was filed).

*Fall, and Possible Resurrection of Indigent Appellate Advocacy in Georgia*, The Appellate Review, pages 1, 10–14 (Winter 2011) (article in newsletter of State Bar of Georgia's Appellate Practice Section by former director of GPDC Appellate Division). Given the shortcomings of our system, it is unsurprising to learn that we have made ourselves an outlier. The federal government and most states leave ineffectiveness claims for resolution on habeas. See *Massaro v. United States*, 538 US 500 (2003); Ryan C. Tuck, *Ineffective-Assistance-of-Counsel Blues: Navigating the Muddy Waters of Georgia Law after 2010 State Supreme Court Decisions*, 45 Ga. L. Rev. 1199, 1202 (2011).

Given that our system delays the resolution of nearly all criminal direct appeals, that means that when we do reverse or vacate a judgment, the passage of time has rendered retrial harder (if not impossible): witnesses may have died, memories have faded, evidence may have been lost, etc. And in those rare cases in which a conviction is reversed for reasons that mean the law prohibits the State from retrying the case, the defendant entitled to release has

wasted years of their life in prison first.

We also do all of this in the most inefficient way possible. This system forces district attorneys' offices to divert resources from prosecuting crimes and instead, as soon as a defendant is convicted and sentenced, spend years relitigating all of the same issues in the same court on the motion for new trial. It forces public defender offices to stretch limited dollars to provide multiple lawyers to complete a single direct appeal that takes only one lawyer in most other states and the federal system.

No rational person would have chosen the system we have today if presented with it as a whole. And thoughtful leaders in the public defender community have at times advocated for change. See Bonner, The Appellate Review, pages 1, 10–14 (criticizing "perverse" system that encouraged "casual substitutions" of counsel to handle ineffective assistance of counsel claims, irrespective of those claims' seriousness). But because this system evolved slowly over decades, we haven't paused to consider the brokenness of the system. We should.

Although this Court largely created this system one decision at a time over decades, the resulting mess now exceeds our ability to fix it unilaterally. We *could* change at least some of the rules we imposed one at a time as they arise in cases before us; for example, we could end the requirement to raise ineffectiveness at the first available opportunity, and (as I have previously suggested) adopt a conflict rule specific to public defenders. But the nature of a court changing legal rules in cases means that we can't change them all at once. More importantly, those changes would improve our system only if combined with other changes that we lack the authority to impose. For example, sending ineffectiveness claims to habeas is an improvement only if it is paired with creating a limited statutory right to counsel in habeas for certain claims. Taking the thousands of ineffectiveness claims litigated each year in motions for new trial across all 51 judicial circuits and sending them all to habeas proceedings overseen by the relatively small handful of circuits that house Georgia prisons would be a serious problem for judicial workloads. And a shift of this sort would likely require budget shifts.

All of those things — creating a limited right to counsel for some habeas proceedings, adjusting habeas venue, and budget adjustments — are the sort of thing that far exceeds the judicial power.

But the good news is that the General Assembly has the power to make at least many of these changes. Virtually all of the rules our decisions set up are simply creatures of decisional law, not interpretations of the Georgia or United States Constitutions that would be much harder to alter. And the one clear constitutional ruling in *Garland* (regarding the necessity of conflict-free counsel for claims that must be raised on direct appeal) was a contingent ruling; the constitutional holding followed from our requirement to raise ineffectiveness at the earliest opportunity. If that procedural rule were changed, the constitutional holding strikes me as likely to be abrogated.

In short, the system is broken. We did a lot of the breaking. But it will require legislative action to fix it.

I am authorized to state that Presiding Justice Warren, Justice

Bethel, Justice McMillian, Justice LaGrua, Justice Colvin, and Justice Pinson join in this concurrence.