NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S25A0984. GIBSON v. THE STATE.

ELLINGTON, Justice.

On September 9, 2024, Jeremy Wade Gibson ("Gibson") entered a non-negotiated plea of guilty but mentally ill to malice murder and other crimes in connection with the shooting death of his wife, Amy Gibson. Gibson appeals from the order of the Superior Court of Dawson County denying his motion to withdraw his guilty plea, contending that the attorney who represented him in his efforts to withdraw his guilty plea was ineffective because of a potential conflict of interest that prevented him from adequately investigating the grounds for withdrawal. He also contends that the trial court committed reversible error by refusing to allow counsel an adequate opportunity to present evidence in support of the motion to withdraw Gibson's guilty plea and by failing to inquire into counsel's conflict of interest. As explained below, because

Gibson has not demonstrated any error, we affirm the trial court's order.

1. In his first claim of error, Gibson contends that he "was denied effective assistance of counsel" when the attorney who was appointed to represent him at his motion to withdraw his guilty plea "chose not to investigate due to a stated conflict of interest." The record below does not support this contention.

Our review of the record shows that the shooting, which occurred on July 29, 2019, was witnessed by several people, including the Gibsons' two minor children. Immediately after the shooting, Gibson surrendered to the police and confessed to killing his wife. A Dawson County Grand Jury indicted Gibson on September 9, 2019, for the offenses of malice murder (Count 1), felony murder (Counts 2 and 3), aggravated battery (Count 4), family violence aggravated assault, (Counts 5, 6, 7, 15 and 17), aggravated assault (Counts 8, 9, and 10), terroristic acts (Count 11), possession of a firearm during commission of a felony (Count 12), cruelty to children in the first degree (Count 13 and 14), and robbery

by force (Count 16**).**

On August 2, 2019, Gibson applied for an appointed attorney. Shortly thereafter, Brock Johnson of the Northeastern Judicial Circuit Public Defender's Office entered an appearance on Gibson's behalf. On November 4, 2019, Adam Levin and Erin Wallace of the Northeast Georgia Regional Capital Defender's Office were substituted as counsel for Gibson. The State filed a Notice of Intent to Seek the Death Penalty on December 4, 2019. Thereafter, counsel filed over 80 motions on Gibson's behalf. In October 2021, Wallace was allowed to withdraw because she had left her employment with the Public Defender's Office. Several other attorneys with the Northeast Georgia Regional Public Defender's Office represented Gibson in various hearings, including Jerilyn Bell, Laura Cobb, and Nathaniel Studelska. Christian Lamar of the Georgia Capital Defender Metro Division also participated in Gibson's representation.

On May 21, 2024, Gibson's defense team reached an agreement with prosecutors whereby the State would withdraw its intention to

seek the death penalty in exchange for Gibson waiving his right to a jury trial and for certain evidentiary concessions (i.e., waiving his right to confront and cross-examine his minor children). The trial court accepted the agreement and scheduled the case for a bench trial to take place on September 9, 2024.

On the day the trial was scheduled to begin, Gibson decided to plead guilty and enter a non-negotiated plea of guilty but mentally ill to all charges. Gibson stipulated that a factual basis existed for the plea and he waived his right to withdraw his guilty plea prior to sentencing. During the plea hearing, Gibson informed the court that he was comfortable with his decision, that he understood the charges against him, and that his attorneys had done nothing that affected his ability or willingness to enter the plea. The trial court advised Gibson of the rights he waived by pleading guilty, and Gibson said that he understood the consequences of his decision and affirmed that his decision to plead guilty was knowing and voluntary. The judge reviewed Gibson's medical and mental health records prior to accepting the plea. Studeleska, Gibson's lead plea counsel, stated

4

that he was satisfied that Gibson was competent to enter his plea, that Gibson was entering his plea voluntarily, and that a factual basis existed for the plea. On September 12, 13, and 17, 2024, the trial court conducted hearings, admitted evidence, and entertained arguments from both parties concerning the appropriate sentence. On September 17, 2024, the court sentenced Gibson to serve life in prison without the possibility of parole as well as an additional 75 years of consecutive prison time for his other crimes.

On October 15, 2024, Gibson filed a "Motion to Withdraw Plea of Guilty and to Appoint Conflict-free Counsel." The motion did not indicate what the conflict was. The court held a status conference on November 1, 2024. Upon learning that Gibson intended to raise claims of ineffective assistance of counsel, the court said it would appoint the Northeastern Judicial Circuit Public Defender's Office to represent Gibson. The court noted that because Gibson's original counsel, Johnson, had left that office, there should be no conflict of interest. However, the court suggested that new counsel could raise such a claim if counsel believed a conflict existed. The court reduced

its decision to writing in an order filed on November 4, 2024.

The trial court rescheduled the hearing on Gibson's motion to withdraw his guilty plea to December 13, 2024. On December 11, 2024, Sarah Willis of the Northeastern Judicial Circuit Public Defender's Office stated in a written motion for a continuance: "After discussions with the Court, it was determined that there would be no conflict were the public defender to represent Mr. Gibson." On December 13, Robert McNeill, from the same public defender's office, appeared before the trial court, noted that he had spoken with Willis, entered an appearance on Gibson's behalf, and then requested a continuance. The court granted defense counsel's request for a continuance and rescheduled the hearing to January 3, 2025.

On January 2, 2025, McNeill filed a "Motion for Continuance or, in the Alternative, Motion to Withdraw as Counsel." The following day, just before the rescheduled hearing on Gibson's motion to withdraw his guilty plea commenced, counsel filed an "Amended Motion to Withdraw Plea of Guilty and to Obtain

6

Conflict-Free Counsel." In the amended motion, Gibson argued that the court's alleged refusal to allow Gibson to "unfreeze" funds to hire private counsel violated his Sixth Amendment right to hire conflict-free counsel.[1] The amended motion, however, did not specify what McNeill's potential conflict of interest was. The court denied the motion in a written order entered on January 8, nunc pro tunc to January 3. The court found, among other things, that McNeill was an experienced attorney and that he had access to all the documents necessary to represent Gibson. Additionally, the court noted that Gibson had requested appointed counsel on November 1, 2024, and had represented to the court at the hearing on December 13, 2024, that he "had heard good things" about McNeill. The court concluded that Gibson had shown no basis for the requested continuance, finding Gibson's motion to be a "dilatory tactic." Further,

the Court does not find the testimony of the Defendant

---

[1] The record does not show that Gibson had previously moved the trial court in his criminal case for an order to unfreeze funds to retain private counsel. In its written order, the trial court noted that Gibson "had filed a Motion in Dawson County Civil Action File Number 2021-CV0313, a wrongful death case, seeking to release $10,000.00 of $189,000.00 in frozen funds, to retain Michael A. Schwartz, a private attorney, in this matter[.]"

credible as to his "intentions" to retain private counsel, but for the civil case order that froze his funds, as the Defendant's own testimony was that he had a significant amount of funds available to him, outside of the "frozen funds" which he utilized to pay for the services of his civil attorney.

Having denied the motion for a continuance, the court proceeded to hear Gibson's motion to withdraw his guilty plea. During the hearing, Gibson made conflicting statements about his ability to hire private criminal defense counsel, saying he was either prevented by his previous public defenders from doing so (because he was "misled" by their "inadequate" advice) or that he wanted to preserve his funds to "give to [his] children." The record shows that Gibson had retained private counsel in a related civil suit, and that this attorney could represent him in matters pertaining to the funds that had been frozen. McNeill, likewise, made conflicting statements, e.g., stating that "[w]e're prepared to go ahead," but, during closing argument, argued that he was unprepared for the hearing. Although McNeill asserted that Gibson was entitled to conflict-free counsel, he did not explain what his alleged conflict was

8

or make any legal argument based on his alleged conflict of interest. The trial court orally denied the motion to withdraw the guilty plea from the bench, stating, among other things: "I find it not credible that you at any point in time were intending to retain anyone else." The court entered an order denying Gibson's motion to withdraw his guilty plea on January 16, 2025. Gibson filed a Notice of Appeal from that order on February 18, 2025.

In its January 16, 2025, written order denying Gibson's motion to withdraw his guilty plea, the court recounted the procedural history of the case and addressed each of Gibson's grounds for relief. Although the court did not specifically address the assertion that McNeill or any other attorney had a potential conflict of interest, the court did address what was presented as the basis for the claimed conflict: that Gibson wished to hire private counsel. The court ruled:

> Finally, whatever Defendant's stated preference might be, he has not yet hired private counsel, specifically indicated to this Court that he wanted appointed counsel on November 1, 2024, and on December 13, 2024, indicated that he had "heard good things" about Mr. McNeill. The Court finds that Defendant has not met any burden in the context of his Motion to Withdraw his guilty

9

plea, that Mr. McNeill's representation was ineffective. The court found that Gibson had access to substantial funds as well as the opportunity to hire private counsel prior to his funds being frozen in the civil suit. Instead, he chose to direct those funds to other uses and to request appointed counsel. The court also found that Gibson's testimony lacked credibility, concluding that he was "simply not worthy of belief." Finally, the court concluded that Gibson "failed to show that he actually has access to sufficient funds to retain counsel [at the time he filed his motion to withdraw] and has also failed to show how additional time would have helped him or how he was harmed by the denial of the continuance."

As part of the Sixth Amendment guarantee of effective assistance of counsel in criminal prosecutions, a defendant has the right to representation that is free of an actual conflict of interest. See *Adams v. State*, 317 Ga. 342, 350 (2023). For purposes of evaluating an ineffective assistance of counsel claim on this basis, an actual conflict of interest means a conflict that significantly and adversely affected counsel's representation of the defendant. It was

Gibson's burden to demonstrate the existence of such a conflict. See, e.g., *Hall v. Jackson*, 310 Ga. 714, 720 (2021) (explaining that, to carry his burden of proving that his appellate counsel provided ineffective assistance based on a conflict of interest, the appellant was required to show an actual conflict of interest that significantly and adversely affected counsel's representation of him); *State v. Abernathy*, 289 Ga. 603, 607 (2011) ("[I]n order to establish ineffective assistance arising from a conflict of interest, a defendant must show the existence of an actual conflict that adversely affected counsel's performance."). Moreover, "mere speculation about potential conflicts of interest cannot establish that a conflict significantly and adversely affected counsel's performance[.]" *Moss v. State*, 312 Ga. 202, 210 (2021).

In this case, Gibson baldly asserts that McNeill had a conflict of interest, but he does not explain what that conflict was or how it affected counsel's performance. The record shows, instead, that the crux of Gibson's argument below was that he desired to hire his own

11

attorney.[2] Gibson does not present any argument or citation of authority to support the conclusion that his desire to hire private counsel rendered his appointed counsel conflicted. The record simply does not support a finding that counsel articulated an actual conflict of interest, nor does the record show that McNeill was prevented by any conflict from investigating the case, reviewing the record, exploring potential bases for withdrawing the plea, or otherwise zealously representing Gibson. Consequently, this claim of error fails.

2. In his second claim of error, Gibson argues that the trial court, by denying his motion for a continuance, improperly denied him "an adequate opportunity to present evidence in support of his motion to withdraw his plea." "All applications for continuances are addressed to the sound legal discretion of the court and … shall be granted or refused as the ends of justice may require." OCGA § 17-

---

[2] We note that Gibson has not argued on appeal that either McNeill or the plea court should have taken any action to unfreeze his funds. The record shows that Gibson's civil attorney had moved to unfreeze those funds in the civil suit.

8-22. See also *Anglin v. State*, 312 Ga. 503, 510 (2021) ("A trial court has broad discretion in granting or denying a motion for continuance."). Absent a clear showing by Gibson of an abuse of this broad discretion, this Court will not disturb the trial court's decision to deny the motion for continuance. See *Phoenix v. State*, 304 Ga. 785, 788 (2018).

The record in this case shows that Gibson had been litigating his criminal case for over five years, that he had adequate time and funds to hire private counsel prior to his funds being frozen, and that he had done so in a related civil suit. The court also found that Gibson's testimony with respect to his desire to hire private counsel lacked credibility. The record shows that McNeill was a senior public defender who had the opportunity to familiarize himself with the record in Gibson's case and to prepare for the hearing on the motion to withdraw Gibson's guilty plea. McNeill had already been granted one continuance, he did not move for the second until the eve of the scheduled hearing, and the rationale for that motion was that Gibson wanted to hire his own attorney. McNeill told the court that

he was prepared to proceed at the beginning of the hearing. During the hearing, McNeill gave a thorough presentation, examined Gibson, and posited several grounds for why Gibson should be allowed to withdraw his guilty plea. Given these circumstances, Gibson has not shown that the trial court clearly abused its broad discretion in denying the motion for a continuance. See id.

3. In his final claim of error, Gibson contends that the trial court's "failure to inquire into Mr. McNeill's stated conflict of interest warrants a new hearing." The record does not support Gibson's contention that the trial court failed to inquire into McNeill's alleged conflict of interest. Rather, it shows that McNeill never articulated an actual conflict of interest; but instead, he used "conflict" as shorthand for his client's desire to hire private counsel. And the trial court did, in fact, address that claim. In this case, as in *Williams v. State*, "[n]ot only did Appellant's counsel not represent to the court before [the hearing] that a conflict of interest existed that could adversely affect his representation, counsel's conduct during the [hearing] demonstrated that there was no actual

14

conflict of interest that adversely affected his representation of Appellant." 302 Ga. 404, 411 (2017). Consequently, this claim of error fails.

*Judgment affirmed. All the Justices concur.*